421 A.2d 449

**William D. MacALEER and Scott C. Wilson**

v.

**SUN OIL COMPANY, also trading as "Sunoco".**

**Appeal of SUN OIL COMPANY.**

Superior Court of Pennsylvania.

Argued June 21, 1979.

Filed July 25, 1980.

Petition for Allowance of Appeal Denied Nov. 5, 1980.

William J. O'Brien, Philadelphia, for appellant.

Sheridan P. Hunt, Jr., Philadelphia, for appellees.

Before HESTER, HOFFMAN and CATANIA,* JJ.

CATANIA, Judge:

This was a class action brought by William D. MacAleer and Scott C. Wilson, against Sun Oil Company. At trial,

* President Judge FRANCIS J. CATANIA, of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by special designation.

plaintiffs represented a class consisting of former employees of Sun Oil Company who participated in a Group Health Service Plan for all or a portion of the period from July 1, 1971 to June 30, 1972. The plan was contracted by Sun with two Health Plan Corporations commonly referred to as Blue Cross/Blue Shield.

According to the plan, Sun was required to pay a fixed premium with the employees' contribution fluctuating according to the risk. At the end of the first plan year, June 30, 1972, an evaluation of the year's experience and the premium costs for the next year would be fixed in accordance with the experience. The evaluation resulted in a surplus of $1,043,084.52 to be refunded to the company, and maintenance of the same premium for the subsequent plan year.

Sun had the option of distributing this surplus to employees or calling a moratorium on premiums for the next plan year until the surplus was depleted. Sun chose the former, and in January 1973 distributed all except $114,743.62 among those employees of Sun Company who were in the Health Plan as of June 30, 1972 and were still employees in January 1973 or had retired. In the subsequent plan year, another surplus existed at which time it was distributed to employees along with the remaining $114,743.62 created by the first surplus. This class action was brought by those employees who were members of the plan during the year that the surplus was created but were no longer employed by Sun in January, 1973. The trial court, sitting without a jury, entered a judgment for members of the class action. We reverse.

■ The contract between Sun and Blue Cross/Blue Shield contained no provision for returning the surplus to employees and since a third party beneficiary has no greater rights than are enunciated in the contract itself, the trial court was unable to base its decision on that document. *Grim v. Thomas Iron Company*, 115 Pa. 611, 8 A. 595, 596 (1887); Restatement of Contracts, section 140. However,

the Court found a contract to have been created in the offer and acceptance of a 1971 brochure which explained the proposed health plan to the employees. Although there was no mention of a surplus in the brochure, the Court reasoned that since it stated that Sun's contribution to the plan was fixed, it would thereby be precluded from using any surplus to reduce that fixed contribution.

At the close of the trial, the appellees moved to amend their complaint to add a count of unjust enrichment, which motion was granted. Assuming arguendo that a new theory of recovery may be considered by the fact finder which was not part of the original pleadings, discovery, or trial evidence, this Court is unable to agree with the lower court that Sun was unjustly enriched by the distribution of the surplus. In order to prove unjust enrichment, there must be a showing of detrimental reliance on the part of the class due to representations made by Sun, bad faith on the part of Sun, and that an unjust enrichment would accrue to Sun. *Bailis v. Reconstruction Finance Corp.*, 128 F.2d 857, 859 (3rd Cir.1942). Sun has not been enriched by the distribution as it did not retain any of the surplus for its own account. Neither has it acted in bad faith. On the contrary, the decision to distribute the surplus rather than declare a moratorium on premiums was done to foster good employer–employee relations. It was an internal management decision by Sun in deciding to distribute the surplus, and only where a company acts arbitrarily or in bad faith will a Pennsylvania Court intervene in such decisions. *Hopkins v. Union Canvas Goods Company*, 104 Pa.Super. 264, 158 A. 301 (1932).

The trial court seems to have ignored general insurance principles and practices, thereby making several fundamental errors. It was contrary to these accepted principles for the lower court to have found that "any surplus created was for the benefit of the subscribing employees." In group insurance programs, the premium is based on an estimate of the costs of insuring the entire group, without regard to the specific characteristics of the individuals making up the group at any one time. *Layman v. Continental Assurance*

*Company,* 416 Pa. 155, 205 A.2d 93 (1964). The premium rate for each year will reflect the prior year's claim experience, regardless of changes in the group. Because of these characteristics of group insurance programs, deficits or surpluses resulting from the claim's experience in a given year are never traced to the individuals generating that deficit or surplus; rather, the consequences of that year's claim experience are felt in the subsequent plan year.

If Sun had declared a moratorium on employee contributions, the appellees and other former employees would not have had the benefit of the surplus. Likewise, if there had been a premium deficit, Sun could not have collected money from these former employees, and the active employees would be the ones bearing the burden of increased future premiums. It can not be legitimately contended, therefore, that Sun has acted in bad faith by not including the members of the class in the distribution of the surplus. Since appellees are not liable for any burden, neither are they entitled to any benefit.

The trial court cites *Levitt v. Billy Penn Corp.,* 219 Pa.Super. 499, 283 A.2d 873 (1971), and *Garner v. Girard Trust Bank,* 442 Pa. 166, 275 A.2d 359 (1971) in an attempt to show that courts liberally construe employer–employee financial agreements. However, those two cases are distinguishable from the one at bar, as they involved pension plans where the employees had contractual rights, the very purpose of which are to insure a financial return to the employee at some future date. Such plans are not at all similar to health insurance plans, which have as their basic purpose medical protection while on the job and any financial return in the way of a surplus is purely incidental to the protection, and not at all anticipated as is a return from a pension fund.

■ The formal requirements for a binding contract, offer, acceptance, and bargained for consideration, as enunciated in *Fahringer v. Strine Estate,* 420 Pa. 48, 216 A.2d 82 (1966) have not been satisfied. The 1971 brochure was not an offer to enter into a contract, but was merely intended to describe the effect that the new health plan would have on the employees.

For the foregoing reasons, the decision of the lower court is hereby reversed.