595 A.2d 1308

**Neal WARREN, individually and t/a Electronic Servicenter**

v.

**Daniel GREENFIELD, Appellant.**

Superior Court of Pennsylvania.

Argued May 9, 1991.

Decided Aug. 21, 1991.

602

Donna Dougherty, Philadelphia, for appellant.

Arthur D. Rabelow, Bensalem, for appellee.

Before ROWLEY, President Judge, and CIRILLO and JOHNSON, JJ.

ROWLEY, President Judge:

This is an appeal by defendant/appellant Daniel Greenfield, owner of two buildings in Philadelphia. Appellant appeals from the judgment entered in favor of plaintiff/appellee, Neal Warren, who leases space in one of the buildings for commercial purposes. Following a bench trial, and denial of appellant's motion for post-trial relief, the trial court entered judgment in favor of Warren and against appellant in the amount of $42,644.00; this appeal followed. On appeal, appellant alleges numerous trial court errors and seeks a reversal of the trial court's decision or, alternatively, a remand to the trial court on the sole issue of damages. Having thoroughly reviewed the record and the arguments presented, we find these arguments to lack merit, and affirm.

The factual and procedural history is as follows: This action is predicated on the terms of a lease agreement between appellant (lessor) and Warren (lessee), owner of Electronic Servicenter, an audio and visual equipment repair service. Previously, appellant and Warren had a lease agreement whereby Warren leased the first floor of 13 South 21st Street in Philadelphia. However, by terms of the new lease, dated June 1, 1988, Warren was to rent the "street floor and *full* basement at 13 South 21st Street" (emphasis added) for a term of five years. The basement in this building consists of two rooms—a large "rear" portion, and a utility room, located in "the front." As per the terms of the June 1st lease, appellant was permitted to store materials in the basement for up to 90 days from the inception of the lease (until September 1, 1988). However, the lease also stipulated that appellant was to relinquish possession of the "full basement" within 90 days, as well as give Warren a $400 monthly abatement for use of the basement during this period. Paragraph 30 of the agreement also provided that:

> In the event that Lessor sells or enters into an agreement to sell the demised premises, ... this Lease *may* be terminated by Lessor giving immediate notice to Lessee who shall have the greater of the following periods of time to vacate the premises:
>
> (a) 120 days from the date of written notice of the entering into the [sic] agreement of sale, or
>
> (b) 30 days after the actual closing of the sale, but in all events, not less than 120 days from receipt of written notice of signed [sic] agreement of sale.

(Emphasis added.)

On July 15, 1988, appellant entered into an agreement of sale with Antonios and Sophia Dimapoulos for buildings 13 and 15 on South 21st Street. For reasons that are unclear from the record, appellant failed to vacate the basement at 13 South 21st Street during the 90–day period, as was specified in the June 1st lease agreement, but instead, on October 18, 1988, sold his entire interest in both properties

to the Dimapouloses. Along with this conveyance, appellant assigned to the new owners all leases currently "in full force and effect." Also on that date, appellant entered into a "new" lease agreement with the owners for "the front room" (basement) of 13 South 21st Street. (Lease Agreement, October 18, 1988, paragraph 2.)

*Thereafter,* on October 19, 1988, appellant *verbally* notified Warren that the buildings had been sold, and informed Warren that the June 1st lease had been terminated. On October 20, 1988, appellant hand delivered a letter to Warren, dated October 19, 1988, which stated that "[t]itle was transferred on 18 October 1988" and that Warren would "either have to surrender occupancy or negotiate a new lease with the owner."

Appellant continued to occupy the basement. After several months, appellant relinquished possession of the large "rear portion" of the basement but refused to vacate the front utility room, claiming his entitlement to this space on the basis of the "new" lease agreement with the Dimapouloses. This series of events prompted Warren's present action against appellant, wherein Warren sought possession of the entire basement, as well as damages for appellant's wrongful detention of the basement space.

A bench trial was held on January 16–18, 1990,[1] after which the parties submitted proposed Findings of Fact and Conclusions of Law. On February 27, 1990, the trial court adopted the findings of fact and conclusions of law submitted by Warren, and concluded that the lease of June 1, 1988 was in full force and effect on October 19, 1988; that the letter dated October 19, 1988 from appellant to Warren did *not* terminate the lease of June 1st; that appellant had assigned all of his rights in the lease to the new owners on October 18, 1988; that Warren was entitled to possession of the *full* basement after September 1, 1988; that appellant wrongfully withheld possession of the large rear portion of the basement until April 1, 1989 and of the front utility

---

1. Since appellant had vacated all portions of the basement by December of 1989, the ejectment issue was not addressed at trial.

portion until December 1, 1989; and that appellant's wrongful possession of the basement areas hampered Warren's business endeavors, causing him to lose one year's profits totalling $42,644.00.[2] Appellant's motion for post-trial relief was filed and denied. The trial court then entered judgment in favor of Warren, and against appellant, in the amount of $42,644.00. This timely appeal followed.

Initially, appellant contends that appellee Warren is not entitled to damages for his—appellant's—extended possession of the front portion of the basement, based on his assertion that no valid lease agreement existed between the parties. Appellant's claim is twofold. First, appellant argues that the lease agreement of June 1, 1988 was an invalid contract because the term "full basement" is ambiguous. In support of this claim, appellant argues that the use of the (single) term "basement" in other portions of the lease, when apparently referring to the same rental space, created an inherent ambiguity, which invalidated the lease agreement. Second, appellant contends that Warren was unilaterally mistaken as to the meaning of the term "full basement," since appellant did not intend for the term to include the utility room. Appellant posits that since Warren's "mistake" went to the "basis of the bargain," there was no "meeting of the minds" on this issue, and hence, no enforceable contract between the parties. These arguments must fail.

It is well settled law that a lease agreement is in the nature of a contract, and is controlled by principles of contract law. *Amoco Oil Co. v. Snyder*, 505 Pa. 214, 478 A.2d 795 (1984); *Village Beer & Beverage, Inc. v. Vernon D. Cox & Co.*, 327 Pa.Super. 99, 475 A.2d 117 (1984); *Cusamano v. Anthony M. DiLucia, Inc.*, 281 Pa.Super. 8, 421 A.2d 1120 (1980); *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979). When we, as a reviewing court, are asked

2. The trial court stated, in its opinion, that Warren's damages were computed "by averaging the high and low for each bench ($122,200.00 plus $61,100.00, divided by 2, equals $91,650.00, times two benches, less costs of $111,656.00, less $29,000.00 profit earned on partial operation)" (Trial Court Opinion, at 6).

to interpret or review the meaning of a contract, the intent of the parties is paramount, and our objective is to ascertain the parties' intent as it is *manifestly expressed* in the agreement itself. *Cusamano, supra; Daniels v. Bethlehem Mines Corp.*, 391 Pa. 195, 137 A.2d 304 (1958); *Paull v. Pivar*, 161 Pa.Super. 233, 53 A.2d 826 (1947). The intent of the parties to a written contract is regarded as embodied in the writing itself. *Marcinak v. Southeastern Greene School District*, 375 Pa.Super. 486, 544 A.2d 1025 (1988); *Giant Markets, infra.* In the absence of technical terminology, we give the words used in the agreement their plain and ordinary meaning. *West Development Group, Ltd. v. Horizon Financial, F.A.*, 405 Pa.Super. 190, 592 A.2d 72 (1991); *Giant Markets v. Sigma Marketing Systems*, 313 Pa.Super. 115, 459 A.2d 765 (1983); *Sharp v. McKelvey*, 196 Pa.Super. 138, 172 A.2d 580 (1961); *Pines Plaza Bowling, Inc. v. Rossview, Inc.*, 394 Pa. 124, 145 A.2d 672 (1958); *Paull, supra.*[3] When the words of a contract are unequivocal, they speak for themselves, and a meaning other than that expressed cannot—and will not—be given to them. *Marcinak, supra; Amoco Oil, supra.* *A fortiori*, where the words used are clear and unambiguous, this Court will not rewrite the contract or give it a construction that conflicts with the plain, ordinary, and accepted meaning of the words used. *Litwack v. Litwack*, 289 Pa.Super. 405, 433 A.2d 514 (1981). *See also:* 4 WILLISTON ON CONTRACTS, § 601 (3rd ed. 1961) ("The primary object in the interpretation of any writing is to ascertain and effectuate the intent of the parties. Where the words of a contract . . . are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.").

**3.** *See also:* Restatement (Second) of Contracts, § 202:
§ 202. Rules in Aid of Interpretation
\* \* \* \* \* \*
(3) Unless a different intention is manifested,
(a) where language has a generally prevailing meaning, it is interpreted in accordance with that meaning;
(b) technical terms and words of art are given their technical meaning when used in a transaction within their technical field.

Appellant urges this Court to accept the argument that the term "full basement" is ambiguous, and that this alleged ambiguity serves to invalidate the June 1st lease agreement. This we cannot do. Webster defines the word "full," as it is used in the context of the June 1st lease agreement, as pertaining to that which "uses or occupies all of a given space." WEBSTER'S NEW UNIVERSAL UNA-BRIDGED DICTIONARY 740 (2d ed. 1983). The *plain meaning* of the words "full basement" clearly makes reference to the basement area *in its entirety*—including the utility room. Despite appellant's arguments to the contrary, no foundation exists for interpreting the words "full basement" as referring to anything less than the entire basement area, and the fact that the (single) word "basement" was used in other portions of the lease agreement does not belie this fact. We must reject appellant's implicit recommendation that we treat the added word "full" in the disputed portion of the lease as mere surplusage, since "the law does not assume that the language of [a] contract was chosen carelessly." *Daniels v. Bethlehem Mines Corp.*, 391 Pa. 195, 203, 137 A.2d 304, 308 (1958). Therefore, we find no error in the trial court's conclusion that the words "full basement" are clear and free of ambiguity, and were indicative of an intent to lease the entire basement level of the property, which includes the utility room.

Appellant also argues that no valid lease agreement exists since appellee Warren was unilaterally mistaken as to the meaning of the words "full basement." Appellant asserts that "[*he*] did not intend "full basement" to include rental of the utility room" (emphasis added), and that "any reference to basement in the lease was therefore exclusive of the utility room." Appellant also argues that Warren knew—or should have known—that the utility room could not reasonably have been intended for inclusion since appellant, as property owner, would need to retain access and control over this area. Moreover, appellant contends that since this "mistake" went to the "basis of the bargain," there was no "meeting of the minds" on this issue; hence,

appellant denies the existence of any enforceable contract between the parties. We disagree.

First we note, as a preliminary matter, that a unilateral mistake will not void a contract. *Herman v. Stern*, 419 Pa. 272, 213 A.2d 594 (1965). Generally, if a mistake is not *mutual*, but *unilateral*, and is not due to the fault of the one not mistaken, there is no basis for relief. *McFadden v. American Oil Company*, 215 Pa.Super. 44, 257 A.2d 283 (1969). Insofar as appellant contends that *appellee's* "mistake" invalidates their lease agreement, appellant's argument misses the mark, since unilateral mistakes will not void a contract.[4] We conclude, therefore, that *appellee's alleged* "mistake" did not negate the existence of a valid and enforceable contract.

Appellant also argues that appellee Warren either knew or should have known that he—appellant—did not intend for the term "full basement" to include the utility room. However, we quickly dispose of this argument by reiterating that our role as a reviewing court is to examine that which has been *clearly* expressed in the writing; appellate courts are prohibited from speculating as to the mental processes or unexpressed expectations of the contracting parties. *Daniels, supra.*[5] Our review of the

4. *See also:* 13 Williston on Contracts, § 1577 (3rd ed. 1970): "[Where there] is no claim ... of fraud or duress or mutual mistake ... it is well established that one having the capacity to understand a written document .. [and who] ... signs it, is *bound* by his signature" (emphasis added). Moreover, "[where a signer] has made himself acquainted with the words of the document and his mistake concerns its interpretation or legal effect, *his unilateral error affords no more grounds for relief than does ignorance of the words.*" *Id.* (emphasis added). Similarly, Comment (a) of Section 153 of the Restatement (Second) of Contracts (1981) states that "[courts are] reluctant to allow a party to avoid a contract on the ground of mistake, even as to a basic assumption, if the mistake was not shared by the other party."

5. Williston on Contracts also states that:
The unexpressed understanding of one of the parties to a contract as to its meaning is usually of no legal significance ... as it cannot be used to overthrow the effect of the intention actually made manifest in the contract.
4 WILLISTON ON CONTRACTS, § 606 (3rd ed. 1961) (citations omitted). Accordingly, this Court has also stated that where an agreement

June 1st lease agreement shows the lease to be devoid of any indication that the utility room was to be excluded, or that the term "full basement" was restricted in meaning. That *appellant* did not intend for the utility room to be included as rental space is not dispositive, since appellant's purported *actual* intent is nowhere manifested in the lease agreement. Similarly, appellee's actual or presumed knowledge of appellant's intent is immaterial, since our determination as to the parties' intent is made without reference to, or consideration of, that which is unexpressed. We conclude, therefore, that appellant's claim warrants no relief.

 Appellant's third contention is that the trial court erred in concluding that he wrongfully withheld the basement area after September 1988, since he purportedly "terminated the [June 1st] lease in July, 1988 by orally informing [Warren] of the impending sale of the property [and the termination of the lease]." Appellant attempts to buttress this argument by asserting that the Rider to the lease agreement "compels a finding that the lease was properly terminated in July, 1988"; therefore, Warren was not entitled to possession of the basement in September of 1988. However, this argument must fail.

First, the trial court found, as a matter of *fact*, that appellant's "oral notification" that the buildings had been sold, and that Warren's lease was terminated, was given on *October 19, 1988*. The trial court also found that *"[a]t no time on or before October 18, 1988*, did [appellant] or anyone acting on his behalf, give oral or written notice to [Warren] that the lease of June 1, 1988 was being cancelled for any reason" (emphasis added). Therefore, we conclude that appellant's assertion that oral notice was given in July is without a factual basis.

Appellant also claims that the Rider agreement indicates that the lease was terminated in July, 1988. In support of this contention, appellant points to the following language:

, has been reduced to writing, the actual intent of the parties is ineffective unless it has been expressed in the writing. *Paull, supra.*

In the event that Lessor sells or enters into an agreement to sell the property containing the demised premises, ... this Lease may be terminated by Lessor giving *immediate notice* to Lessee....

Rider Agreement, Paragraph 30 (emphasis added). Based on this section of the Rider, appellant argues that the term "immediate notice" fails to specify the *type* of notice required to terminate the lease; therefore, the trial court abused its discretion in determining that appellant's *oral* notification was insufficient.

Nevertheless, the issue of whether the lease *could* have been terminated by "immediate" written *or* oral notice is one we need not decide. Since appellant failed to give Warren *any* termination notice prior to appellant's conveyance of the property and the leases on October 18, 1988,[6] the lease of June 1st was in full force and effect.[7] Therefore, we conclude that the trial court did not err in determining that appellant was in wrongful possession of the basement from September, 1988 onward.

Fourth, appellant contends that the trial court abused its discretion in determining that he wrongfully withheld a portion of the basement, as the "new" lease agreement between appellant and the new property owners entitled him to possession. However, having thoroughly reviewed the record, we concur with the conclusion reached by the trial court, that the June 1st lease agreement was in full force and effect on October 18, 1988 since no action taken by appellant prior to this date served to effectively terminate it. Nor did the new property owners ever attempt to

6. *See:* Trial Court Opinion, p. 3.

7. It should also be pointed out at this juncture that appellant's unilateral decision to give "notice" of the termination of the lease was in effect a nullity, since appellant had assigned all of his rights to the lease in the conveyance of October 18, 1988 (Trial Court Opinion, pp. 2–3). Moreover, the record is devoid of any indication that the "termination notice" was given by appellant *on behalf of* the new owners. In fact, the trial court found that the new owners never cancelled the lease of June 1st and, as of the date of the trial court's opinion, were honoring the terms of the lease with appellee (Trial Court Opinion, p. 3).

terminate appellee's lease. This being the case, Warren was entitled to possession of the entire basement from September 1, 1988 onward.

Lastly, appellant argues that the trial court erred in awarding Warren $42,644.00 for lost profits. Appellant contends that Warren's damages could not have been determined with any reasonable degree of certainty since Warren's video repair business was "new and untried." In addition, appellant contends that since "[n]o factual basis exists in the record to support a finding that [a]ppellant should have foreseen [Warren's] loss as a result of his withholding the basement," Warren is precluded from recovery.

This assertion is not supported by the record. The trial court found, as a matter of fact, that Warren had advised appellant, *during negotiations for the June 1st lease*, that his status as tenant was contingent on his ability to possess the *entire* basement at 13 South 21st Street since, by June 1, 1988, Warren's place of business "could no longer grow or even operate efficiently" due to inadequate spacing.[8] The trial court also found that Warren needed this additional room for storage, a computer, a customer counter, and additional workbenches. We are satisfied that these facts support a finding that Warren's loss was reasonably foreseeable at the time the parties entered the lease agreement. *See also: Gen. Dynafab, Inc. v. Chelsea Industries, Inc.,* 301 Pa.Super. 261, 447 A.2d 958 (1982) ("[D]amages may be assessed for loss of profit where such a loss was reasonably foreseeable to the parties at the time that the contract was entered, and where those damages are capable of proof of reasonable certainty.").

Appellant correctly states, in his brief, that lost profits may not be awarded where "the evidence leaves the trier of fact without *any* guideposts except his or her own speculation." *Merion Spring Company v. Muelles Hnos. Garcia Torres,* 315 Pa.Super. 469, 486, 462 A.2d 686, 695 (1983)

8. *See also:* Trial Transcript, Vol. I, January 16, 1990, pp. 28–29, 38, 85.

(emphasis added). However, in *Merion Spring Company*, this Court also stated that lost profits may appropriately be awarded where "[s]ufficient evidence [is] introduced to permit a *reasonably* certain estimate of the amount of anticipated profits lost due to the breach." *Id.* (emphasis added). We also stated that even "new businesses may be able to adduce sufficient evidence to obtain an award for lost profits ..." *Id.*, 315 Pa.Superior Ct. at 487, 462 A.2d at 696. *See also: Gen. Dynafab v. Chelsea Industries, supra.*

█ In assessing the dollar amount of Warren's lost profits, our review of the record shows that the trial court considered both testimonial evidence and exhibits regarding the average weekly (dollar) production of a work bench; the number of workbenches available; the cost of two work benches; vacations, seminars, holidays, and the effect these would have on production; salaries for technicians; taxes; average parts expenses; tools, supplies, and meters for additional benches; additional rent for the basement over a 12–month period; advertising expenses; and other related costs over a 12–month period. The trial court found the dollar amounts submitted by appellee to be credible, and our review of the record has unveiled no error that would warrant disturbing the trial court's findings. We are satisfied that the well documented and detailed computation of the trial court was absent of speculation, and based on substantive dollar amounts. We conclude, therefore, that the trial court properly assessed Warren's lost profits at $42,644.00. Based on the foregoing, we affirm the judgment entered on the order of the trial court denying appellant's motion for post-trial relief, and we deny appellant's request for a remand on the issue of damages.

Judgment affirmed.