612 A.2d 1048

**Carl A. LINDSTROM and Virginia K. Lindstrom, husband and wife, Appellants,**

v.

**PENNSWOOD VILLAGE.**

Superior Court of Pennsylvania.

Argued April 21, 1992.

Filed Aug. 4, 1992.

496

Jonathan E. Rich, Newton, for appellants.

John P. Diefenderfer, Newton, for appellee.

Before ROWLEY, P.J., and MONTEMURO and POPOVICH, JJ.

ROWLEY, President Judge.

In this appeal from the August 27, 1991, order sustaining the preliminary objections of appellee Pennswood Village, appellants Carl A. Lindstrom and Virginia K. Lindstrom, husband and wife, contend that the trial court erred in dismissing all but one of their causes of action, and granting leave to amend within thirty days as to the remaining claim. After a careful review of the record and the law, we disagree with appellants. Accordingly, we affirm the order sustaining appellee's demurrer in this case.

This action was commenced on April 4, 1991, when appellants filed a complaint against appellee Pennswood Village, a nonprofit continuing care facility for individuals over the age of sixty-five, based on five causes of action. Those claims were as follows: (I) breach of contract, (II) breach of implied warranty, (III) constructive eviction, (IV) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and (V) intentionally tortious conduct. Appellee filed preliminary objections on April 23, 1991, in the nature of a demurrer and motion for more specific pleading.

By order entered August 27, 1991, the trial court granted appellee's demurrer as to counts I through IV of the complaint because it found that those counts of the complaint failed to state a cause of action upon which relief

could be granted. The trial court sustained appellee's preliminary objection to the count V, as pleaded, but granted appellants thirty days to amend. Appellants did not amend count V, choosing instead to file this timely appeal.

The issues raised by appellants concern whether the trial court erred in the following five respects: (1) in' holding that appellants did not properly plead causes of action for breach of express and implied contract provisions, (2) in holding that appellants did not properly plead a cause of action for constructive eviction, (3) in holding that appellants did not properly plead a violation of the Pennsylvania Code, Title 28, § 201.29, the Patient's Bill of Rights, (4) in holding that appellants did not properly plead a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and finally, (5) in holding that appellants did not plead their breach of implied warranty claim with sufficient specificity.

■ Initially we note our standard of review. As is our function upon an appeal from a decision of the trial court sustaining preliminary objections in the nature of a demurrer, we must accept as true every relevant fact sufficiently averred in the plaintiffs' complaint together with every inference favorable to the non-moving party which is fairly deducible therefrom. *Ganassi v. Buchanan Ingersoll, P.C.*, 373 Pa.Super. 9, 11, 540 A.2d 272, 273 (1988.) With these standards in mind, we turn to an examination of the record.

The complaint reveals that on or about December 1, 1989, appellants executed a contract with appellee. This agreement was a thirty-two page document entitled "Pennswood Village Residence with Life Care Agreement," which provided that in consideration for the payment of an initial entry fee, plus a monthly maintenance fee, appellants would be entitled to extensive lifetime benefits, including housing, food, and health care. Importantly, the Residence with Life Care Agreement specifies that the document does not create a landlord/tenant relationship and that the appellants were contracting primarily for services. Further, the docu-

ment clearly states that it, together with certain specified supplementary documents, constitute the entire agreement between appellants and appellee.

Appellee's premises include resident apartments, a library, a craft center, a gift shop, a coffee shop, recreational facilities, guest housing, and two special care facilities: (1) Woolman House, which is a skilled nursing unit designed for residents who are ill or injured and need round-the-clock medical supervision, and (2) Barclay House, which is a personal care unit designed to assist residents in independent living. Shortly after signing the Residence with Life Care Agreement, appellants moved into a two-bedroom unit within appellee's premises.

After moving into the community, appellant Virginia K. Lindstrom (hereinafter "wife") began volunteering her services in the Woolman Center as part of a program whereby residents could feed other residents of the facility who were so elderly or disabled that they could no longer care for themselves. From April of 1990 to in or about September 13, 1990, appellant wife assisted two female residents with eating their evening meals. While acting in this volunteer capacity, appellant wife was disturbed that some of the food on the trays which were served to Woolman patients was inappropriate and/or difficult to swallow without excessive chewing. Specifically, appellant wife objected to the fact that the food on the patients' trays was fibrous and needed to be cut in order for the patients to swallow it. And further, she objected that their evening meal was "heavy." Finally, she questioned the wisdom of serving these patients tomato or grapefruit juice as she believed it caused them "gastric reactions."

Appellant wife notified the nursing and dietary staff of her concerns on several occasions. It should be noted that nothing appears of record to suggest that the intended recipients of the food ever complained to appellant wife, nor that she was voicing these concerns at their request. No change was made in the diets of the two patients as a result

of appellant wife's contacts with the nursing and dietary staff.

Finally, outraged at the inattention of the staff to her concerns, appellant wife called on appellee's clinical dietician with notes of her observations. She informed the dietician that she was prepared to take these concerns to state and federal government officials if no change was made in the diet of her patients.

Approximately six days later, appellee's executive director and an associate requested a meeting with appellant wife. Appellant wife contends that during the course of the meeting, she was subjected to "raised voices" with "abusive tone and language" in which she was told that "she could only continue to volunteer so long as she expressed no opinions or criticisms" concerning the types of foods served to Woolman patients. The meeting ended after approximately one and one-quarter hours, whereupon appellee's executive director told appellant wife that "[he] did not want to have th[e] meeting again."

Nevertheless, approximately one week after the September 19 meeting, appellant wife submitted a written memorandum to appellee criticizing the diet designed by the clinical dietician for the two patients. Consequently, appellant wife was no longer permitted to feed her regular patients, but was permitted to feed other patients under the close supervision of the nursing staff.

Appellants contend that "as a consequence of all the foregoing [events], [they] realized that [appellee] was incapable and/or unwilling to fulfill the obligations and representations made by it to them," such that appellee is liable to them for damages under the theories delineated above. They argue that the trial court erred in concluding that all of their causes of action were improperly pled and in dismissing their claims with leave granted to amend the tort claim. We find appellants' contentions completely lacking in merit.

■ The breach of contract claim must fail because no claim has been stated which could entitle appellants to relief. In their complaint, appellants aver that appellee has breached express warranties in two separate documents. First, appellants argue that the trial court erred in dismissing their claim that appellee breached the Residence with Life Care Agreement, as follows: (1) by failing to provide appellants with a residential community which fosters independent living for men and women sixty-five years of age and older, (2) by failing to provide an environment whereby appellants enjoyed the right to occupy and use appellee's living accommodations, and (3) by failing to provide adequate resident health care, nursing care and dietary services. Our careful review of the record reveals nothing which suggests that appellee precluded appellants from the right to live independently or from the right to occupy their living accommodations. The record is equally devoid of the slightest suggestion that appellee has neglected a significant health care or dietary need of any resident.

■ Secondly, appellants argue the trial court erred in dismissing their claim that appellee did not honor a general list of policies entitled "Resident/Patient's Rights," which was expressed in the Resident's Guide Book. This book was given to appellants either upon or shortly before their arrival at the community. It is a voluminous reference manual which details all facets of life at the community— how to do laundry, how to use the meal plans, how to send and receive mail, etc. Appellants claim that this guide book is incorporated into the agreement and that by failing to honor the rights delineated therein, appellees have breached their agreement. We disagree because the Residence with Life Care Agreement specifically provides otherwise, as follows:

 9. *Entire Agreement and Assignability*—This Agreement, including the General Conditions and any specified Addenda, constitutes the entire agreement between the Community and the Resident. This agree-

ment may not be assigned by the Resident to another person.

10. *Documents Made a Part of the Residence With Life Care Agreement*—This agreement includes the Priority Application for Residence with Life Care Agreement; Resident's Financial Information Form; Medical Record Part I and Medical Record Part II; and the report of the physical examination by a Pennswood physician. These documents are hereby incorporated by reference. Knowing that the Community relies on the Resident's statements made therein, the Resident warrants that all such statements are true and complete.

■ When the words of a contract are unequivocal, they speak for themselves, and a meaning other than that expressed cannot be given to them. This Court will not rewrite the contract or give it a construction that conflicts with the plain, ordinary, and accepted meaning of the words used. *Warren v. Greenfield*, 407 Pa.Super. 600, 607, 595 A.2d 1308, 1312 (1991). Therefore, the trial court was correct in concluding that appellants have not stated a cause of action based on a breach of the express provisions of the contract between appellants and appellee in this case.

■ Next, appellants argue that the trial court erroneously concluded that appellee failed to properly plead an implied warranty of habitability and its breach. We find no merit in this claim. The concept of an implied warranty of habitability is only applicable to residential leases. The agreement at issue in this case is not a residential lease. General Condition III(D)(2) unequivocally states that "[n]othing contained in th[e] agreement shall be construed to create the relationship of landlord and tenant between the Community and the Resident. A Resident's rights are primarily for services, and include a right of occupancy subject to all the terms and conditions of their agreement." We therefore conclude that the trial court correctly sustained appellee's demurrer as to appellants' cause of action

based on the breach of an implied warranty.[1] Similarly, we conclude that the trial court properly sustained appellee's demurrer as to appellants' constructive eviction claim. The lack of a residential lease precludes application of the constructive eviction concept to this case.[2]

 The third issue raised by appellants is whether the trial court erred in holding that appellants failed to properly plead violations of the Pennsylvania Code, Title 28, § 201.-29. That section is entitled "Patient rights," and provides that the governing body of a regulated health care facility is required to establish and adhere to written policies regarding the rights and responsibilities of patients. The record reveals that appellee has complied with this requirement in that appellee's Resident Guide Book contains a section entitled "Patient/Resident's Rights" which mirrors the rights specified in § 201.299.

In the complaint, appellants aver that appellee's executive director spoke to appellant wife in an "abusive tone" and with "abusive language." However, no instances of "abuse" within the meaning of § 201.29 were specified. On the contrary, the complaint itself reveals that, despite the considerable disturbance her complaints caused appellee's staff, appellant wife was given a second chance to feed her regular patients on the condition that she refrain from further disruptive behavior. Because appellant wife found

1. We note that even if a warranty of habitability had been implied in the agreement, appellants have failed to plead that the defect was of a nature and kind which would prevent the use of the dwelling for its intended purpose of habitation. *Pugh v. Holmes,* 486 Pa. 272, 289, 405 A.2d 897, 905 (1979).

2. Further, appellants have failed to plead the requisite elements of a constructive eviction. To constitute a constructive eviction, the interference by a landlord with the possession of his tenant or with the tenant's enjoyment of the demised premises must be of a substantial nature and so injurious to the tenant as to deprive him of the beneficial enjoyment of the demised premises, to which the tenant yields, abandoning possession within a reasonable time. *Kuriger v. Cramer,* 345 Pa.Super. 595, 609, 498 A.2d 1331, 1336 (1985). Nothing in the record suggests that appellee interfered with appellants' possession of their accommodations within appellee's community in a substantially injurious manner.

it impossible to so restrain herself, the record indicates that appellee removed appellant wife from the care of her original patients but allowed her to feed other patients under the supervision of the nursing staff. Appellee did not completely preclude appellant wife from further volunteer work. Consequently, we conclude, as did the trial court, that despite appellants' contentions to the contrary, appellee did not violate appellant wife's rights under § 201.29 to be free from abuse and to associate and communicate privately with persons of choice.

The fourth issue which we must address is whether the trial court was erroneous in holding that appellants did not properly plead a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 et seq. Appellants themselves acknowledge that the Pennsylvania Unfair Trade Practices and Consumer Protection Law is aimed at "fraud prevention." *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 457–459, 329 A.2d 812, 815–816 (1974). Rule 1019(b) of the Pennsylvania Rules of Civil Procedure provides, in pertinent part, that "[a]verments of fraud or mistake shall be averred with particularity." Nevertheless, in contravention of Rule 1019(b), appellants have failed to specify the particular facts upon which they rely in bringing their claim under 73 P.S. § 201–1 et seq. We therefore conclude, as did the trial court, that appellants have failed to properly plead a claim pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

And finally, we need not address appellants' contention that the trial court erred by finding that the complaint "completely lacked specificity" as to the alleged breach of an implied warranty of habitability inasmuch as we conclude that where there is not a residential lease, there can be no implied warranty of habitability.[3]

3. However, as we have noted in footnote one, even if there were an implied warranty of habitability in the Residence with Life Care Agreement, appellants' claim would fail because they did not plead any physical defect in the premises of such a nature and kind that

Accordingly, we affirm the trial court order sustaining appellee's demurrer.

Order affirmed.

they were prevented from using their living accommodations in appellee's community for its intended purpose of habitation.