656 A.2d 936

**ARDREY INSURANCE AGENCY, INC., and Bryce McLerran D/B/A Bryce & Associates Insurance, Individually and on Behalf of all Others Similarly Situated**

v.

**The INSURANCE COMPANY OF DECATUR.**

Superior Court of Pennsylvania.

Argued Jan. 26, 1995.

Filed April 3, 1995.

Joseph Roda, Lancaster, for appellants.

Lawrence G. McMichael, Philadelphia, for appellee.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order entered June 3, 1994 granting appellee's, Insurance Company of Decatur,[1] motion for summary judgment. Appellants, a group of insurance agents represented by class agents, Ardrey Insurance Agency, Inc. and Bryce McLerran d/b/a Bryce & Associates Insurance, present the following issues for our review:

1. Whether the trial court erred in failing to find that the agency contract between the parties was ambiguous as to whether Defendant could make the change in its calculation of commissions that is the subject of this litigation.

2. Whether the trial court erred in failing to interpret that ambiguity against Defendant, since Defendant alone drafted the contract.

*See* Appellant's Brief at 3. For the reasons set forth, we affirm.

At various times over the course of the past twenty years, appellants, a class of independent insurance agents, each entered into separate boilerplate agency agreements with appellee which authorized each agent to solicit and issue a variety of insurance contracts for appellee. Paragraph 4 of the agreements which had been drafted by appellee, provided:

As full compensation for services, Company shall pay Agent commissions on premiums written and paid for at the rates specified in schedule(s) attached. Agent shall pay Company return commission at the same rates on any return premiums, including return premiums on cancellations ordered or made by Company. Where no commission rate has been specified, but insurance has been submitted and accepted by Company, the rates shall be determined by Company. The schedule(s) of commissions allowable shall be determined by Company. The schedule of commissions allowable shall be

---

1. Following filing of the instant action, Federal Kemper Insurance Company, the named defendant in the complaint, was purchased by The Associated Group and renamed Insurance Company of Decatur. On June 8, 1994, an order was entered substituting the name "Insurance Company of Decatur" for the name "Federal Kemper Insurance Company."

subject to change by Company at any time by written notice to Agent respecting insurance written or renewed thereafter.

Agency Agreement, ¶ 4.

The first schedule of commissions which took effect on January 1, 1975, outlined a series of commission rates which awarded an agent a percentage of the insurance premiums that agent had captured. The commission rates varied in accordance with the types of insurance policies issued. A distinction in commission rates was also made between first term and renewal insurance. The January 1, 1975 schedule of commissions was standard in several agency agreements between appellee and independent agents until December 16, 1983.

On November 10, 1983, appellee notified appellants that pursuant to paragraph 4 of the agency agreement, a new schedule of commissions would be implemented. This revised schedule, effective December 16, 1983, altered the categorization of insurance policies by creating new subdivisions with different commission rates. The schedule, for the first time, also looked retrospectively at the premium levels attained by individual agents the previous year in assigning rates of commission, rewarding the agents for attaining higher totals in premium levels.[2] Appellee also implemented an Agency Voluntary Profit Sharing Plan, for which an agent's three year loss ratio was one of the key factors used to determine the additional compensation paid to that agent.

On February 7, 1990, the Pennsylvania General Assembly enacted certain legislation known as "Act 6", amended *inter alia* Title 75 of the Pennsylvania Consolidated Statutes, 75 Pa.C.S. § 1791 *et seq.*, which in pertinent part, directed insurers to reduce the costs of automobile insurance to their customers by 22%, effective July 1, 1990. As part of the steps taken to reduce the cost of automobile insurance, in compliance with Act 6, appellee sent written notices to appellants, by

2. Modifications were subsequently made to the schedule on January 16, 1984. The changes, however, did not alter the structure of the November 10, 1983 schedule.

letters dated November 1, 1990, of a new schedule of commissions for automobile insurance, to become effective by December 16, 1990. This proposed schedule combined elements of the 1983 schedule and the Agency Voluntary Profit Sharing Plan and required individual agents to assume a limited loss ratio on certain classes of automobile insurance policies which he or she had written.[3]

On December 14, 1990, appellants filed a complaint in the United States District Court for the Eastern District of Pennsylvania, seeking declaratory and injunctive relief from the proposed schedule of commissions. On August 19, 1991, the Honorable Daniel B. Huyett, III entered an order dismissing the action for lack of subject matter jurisdiction.[4] *See Ardrey v. Federal Kemper Ins. Co.*, 798 F.Supp. 1147 (E.D.Pa.1992) (opinion dismissing action).

On July 16, 1992, appellants initiated this class action in the Court of Common Pleas of Lancaster, PA, asserting that the December 16, 1990 schedule of commissions was contrary to the original intent of the parties in drafting the agency agreements. In the alternative, appellants argued that the contracts were ambiguous and should be construed against their drafter, appellee. Appellants asserted damages in excess of $20,000.00 for each of approximately 200 agents affected by the December 16, 1990 schedule. On February 17, 1993, appellants were granted class certification. Thereafter, on September 10, 1993, appellants filed a motion for summary judgment. On October 12, 1993, appellee filed a cross-motion for summary judgment asserting that appellants had no legal-

3. The loss ratio utilized in the 1990 schedule reflected the dollar amount paid by the insurance company on claims made on an individual agent's book of business over the prior three year period.

4. In the order dismissing the case, the court stated that the agreement was unclear and ambiguous as to whether such a fundamental change in the method of calculating commissions could be implemented. *Ardrey v. Federal Kemper Ins. Co.*, No. 90–7912 (E.D.Pa. Aug. 1991) (order granting motion to dismiss). The court further stated that the inclusion of loss ratio "contradicts a long standing insurance industry practice and past practice between the parties." *Id.* However, as the district court's findings were not essential to the judgement rendered by that court, those findings have no preclusive effect on this action. *Clark v. Troutman*, 509 Pa. 336, 502 A.2d 137 (1985).

ly cognizable damages and were further estopped from bringing the action in a second forum. Following oral argument and the filing of extensive briefs by the parties, the trial court entered summary judgment in favor of appellee on June 3, 1994. This timely appeal followed.

Preliminarily we note, that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Green v. Dolsky,* 433 Pa.Super. 556, 641 A.2d 600 (1994). Moreover, a "trial court's grant of summary judgment will only be reversed for an error of law or a clear abuse of discretion." *Id.* (citing *Myszkowski v. Penn Stroud Hotel, Inc.,* 430 Pa.Super. 315, 634 A.2d 622 (1993)). With this standard in mind, we now review appellants' claims.

▮ Appellants contend that the trial court erred in granting appellee's motion for summary judgment. Specifically, appellants argue that the term "commission", contained within paragraph 4 of the agency agreements, is susceptible to more than one interpretation. In support of their position, appellants direct this court to the following definition within Black's Law Dictionary of "commission":

> The recompense, compensation or reward of an agent, salesman, executor, trustee, receiver, factor, broker, or bailee, when the same is calculated as a percentage on the amount of his transactions or the profit to the principal. A fee paid to an agent or employee for transacting a piece of business or performing a service.

Black Law Dictionary (6th ed. 1990). Appellants also quote the following definition of "commission" from the Random House Dictionary:

> A fee paid to an agent or employee for transacting a piece of business or preforming a service; esp. a percentage of the money received from a total paid to the agent responsible for the business.

Random House Dictionary of the English Language (unabridged 1983 edition). It is appellants' belief that these two definitions demonstrate an ambiguity within the agency agreements.

A contract is ambiguous if it is "reasonably susceptible of different constructions, is obscure in meaning through indefiniteness of expression or has a double meaning." *Department of Transp. v. IA Const. Corp.*, 138 Pa.Commw. 587, 588 A.2d 1327 (1991). Where such an ambiguity does exist, a party may only be bound to a meaning of a term if he has reason to know of it. Restatement 2d of Contracts § 200, comment b. However, where the words of a contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent. *Lindstrom v. Pennswood Village*, 417 Pa.Super. 495, 612 A.2d 1048 (1992); *Warren v. Greenfield*, 407 Pa.Super. 600, 595 A.2d 1308 (1991). *See generally* 4 Williston On Contracts § 601 (3rd Ed.1961). In defining the intent of the contracting parties, each and every part of the contract must be taken into consideration and given effect, where possible. *Wrenfield Homeowners Ass'n v. DeYoung*, 410 Pa.Super. 621, 600 A.2d 960, 963 (1991) (citing *Marcinak v. Southeastern Greene School Dist.*, 375 Pa.Super. 486, 491, 544 A.2d 1025, 1027 (1988)); *West Dev. Group, Ltd. v. Horizon Fin., F.A.*, 405 Pa.Super. 190, 592 A.2d 72 (1991) (citing *Cerceo v. DeMarco*, 391 Pa. 157, 137 A.2d 296 (1958)); *Warren*, 407 Pa.Super. 600, 595 A.2d 1308 (in reviewing a contract, the primary goal is to uncover the intent of the parties). *See generally* Restatement 2d of Contracts § 201, comment a. *See also Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984) (where contract exists without a history of bargaining over terms, construction of individual terms of that contract is a question of law).

In the instant case, paragraph 4 of the agency agreements assign appellants "commissions on premiums written and paid for, at rates specified in the schedule(s) attached." As appellants correctly note, the main body of the contract does not define the term "commission". However, in the attached schedule, "commission" is defined as a percentage of the

premiums attained. The main body of the agency agreements further provides that "[t]he schedules of commissions allowable shall be subject to change by Company at any time by written notice to Agent respecting insurance written or renewed thereafter." As the form which the commission would take was defined within the schedule and as the schedule was subject to unilateral change by appellee, upon notice to appellants, we conclude that the form which the commission would take was also subject to unilateral determination by appellee. *Cf.* 19 Pa.Law Encyclopedia § 32 ("Sureties are not exonerated by a change, not to the detriment of the agent, in the rate of commissions allowed on new business, when there is no stipulation in the bond, or in the original agreement between the agent and the company, that the commissions should remain fixed and unaltered.").

Appellants also argue that the inclusion of an agent's loss ratio in the calculation of that agent's commission was a method so unforeseeable that appellants could not be bound to the terms of the contract.

■ A party's failure to anticipate all possible repercussions of a bargained for contract, is insufficient to render the contract invalid. *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162 (1990) (contracting parties are normally bound by their agreements, without regard to whether terms thereof were read and fully understood and irrespective of whether agreements embodied reasonable or good bargains). *See generally* 8 Pa.Law Encyclopedia § 82. Here, the agency agreements entered into by the parties assigned appellee *carte blanche* in determining appellants' commission. Implicit in the agreement was the unqualified right to change appellants' commission, upon notice to appellants, as well as the right to change the method of calculating appellants' commission. There is no evidence that any of the agents ever discussed with appellee the factors to be considered in allocating the commission. Appellants' disillusionment upon recognizing the expansive control they had afforded appellee in determining compensation does not, without more, invalidate the agency agree-

ments.[5] *See, e.g., Community Sports Inc. v. Denver Ringsby Rockets Inc.*, 429 Pa. 565, 240 A.2d 832 (1968) (agreement giving player right to join any team in another league, executed upon player's signing contract for season's play was valid part of entire contract and enforceable).

Appellants, however, further contend that the 1990 schedule fails to treat agents attaining the same dollar volume of business equally.

We note, that in the instant case, appellants entered into separate and distinct agency agreements with appellee, as individual agents rather than as a group. Each agreement ascribed the liabilities and rights between an individual agent and appellee, including the compensation due that individual agent upon fulfillment of his obligations to Company. Where, as here, parties to an agreement do not intend to assign rights beneficial to a third person or fail to indicate the intention to confer within the contract, that third person may not acquire rights under the contract. *R.M. Shoemaker Co. v. Southeastern Pennsylvania Economic Dev. Corp.*, 275 Pa.Super. 594, 419 A.2d 60 (1980). *See also* 8 Pa.Law Encyclopedia § 201. Moreover, none of the agreements provided that the commission received by an agent should be equal to that received by other agents with the same volume of premium dollars. *Warren*, 407 Pa.Super. 600, 595 A.2d 1308 (only the intent of the contracting parties may be given effect). *See, e.g., MacAleer v. Sun Oil Co.*, 280 Pa.Super. 148, 421 A.2d 449 (1980) (there was no basis for judgment for former employees in class action against employer to provide rights not assigned

---

5. Appellants' argument would have us presume that at no point prior to the proposed 1990 schedule, had loss ratio been a factor considered in determining commission. Not only is this argument belied by appellee's practice of placing agents with high loss ratios on a plan of rehabilitation and reducing the rate of their commission as well as the implementation of the loss ratio based profit sharing plan, but also by sound business acumen. No doubt the 1975 schedule had evenly distributed a portion of the losses incurred from the insurance policies among appellants within the same premium levels. The 1990 schedule, however, did not distribute the losses uniformly amongst the agents but instead assigned each individual agent a portion of the losses incurred from that agent's book of business.

employees as third-party beneficiaries to contract between employer and insurer). *See generally* 8 Pa.Law Encyclopedia §§ 143, 144. The mere fact that the contracts entered into by appellants were substantially similar does not imply that the rights received by appellants under those contracts would always remain the same, nor does it impose a duty upon appellee to contract in a manner which treats all agents similarly. Accordingly, we affirm the order of the trial court.[6]

Affirmed.

---

6. We note, that appellants are not precluded from seeking to modify their agency agreements nor from asserting their rights to cancel their contracts with appellee.