671 A.2d 224

**Warren R. HERR, Appellant,**

**v.**

**William GRIER and Pennland Insurance Company.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1995.

Filed Dec. 28, 1995.

Reargument Denied March 5, 1996.

218

Jeffrey D. Wright, Lancaster, for appellant.

Martin S. Hohenadel, Lancaster, for appellees.

Before KELLY, JOHNSON and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the order of the trial court which granted defendant's motion for summary judgment. We affirm.

The trial court aptly summarized the facts giving rise to the instant appeal as follows:

[Plaintiff Warren R. Herr] was injured when the four-wheeled gasoline powered golf cart, in which he was a passenger, overturned. At the time of the accident, the golf cart was being operated on a golf course.

The driver of the golf cart, William Grier, was insured under an automobile insurance policy issued by defendant Pennland. Coincidentally, Herr also was insured under an automobile insurance policy with Pennland. Pennland refused coverage for Herr's injuries under either policy of automobile insurance. In response, Herr filed an action for declaratory judgment, seeking a declaration that Pennland was obligated to pay the full amount of liability coverage

provided under the Grier policy and uninsured or underinsured motorist (hereinafter "UM/UIM") coverage provided under the Herr policy. Soon thereafter, Herr filed the pending motion for summary judgment and Pennland filed the cross-motion on the coverage issues....

Trial Court Opinion filed March 17, 1995 at 1. Herr filed a motion for summary judgment after which Pennland filed a cross-motion for summary judgment. The trial court denied Herr's motion but granted summary judgment in favor of Pennland. This appeal followed.

Plaintiff Herr raises the following issues for our review:

A. Whether Pennland's use of the ambiguous term "auto accident" requires a finding of coverage in favor of Mr. Herr.

B. Whether an exclusion which provides an insured with less UM/UIM coverage than required or allowed by statute is valid.

We shall address these issues in order.

■ Summary judgment may properly be granted by a lower court only if the moving party has shown that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Goebert v. Ondek*, 384 Pa.Super. 100, 104, 557 A.2d 1064, 1066 (1989). The trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. *Jefferson v. State Farm Insurance*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). Summary judgment should not be entered unless a case is clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983).

■ When the Superior Court, as a reviewing court, is asked to interpret or review the meaning of a contract, "the intent of the parties is paramount, and our objective is to ascertain the parties' intent as it is *manifestly expressed* in the agreement itself." *Warren v. Greenfield*, 407 Pa.Super. 600, 607, 595 A.2d 1308, 1311 (1991) (emphasis in original). Where the policy language is clear, the contract will be applied

as written. *Nationwide Mutual Ins. Co. v. Cummings,* 438 Pa.Super. 586, 593, 652 A.2d 1338, 1341 (1994), *appeal denied,* 540 Pa. 650, 659 A.2d 988 (1995). When a provision of a contract is ambiguous, it will be construed in favor of the insured. *Britamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 281, 636 A.2d 649, 651 (1994), *allocatur denied,* 540 Pa. 575, 655 A.2d 508 (1994). As a general rule, a contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one way. *Metzger v. Clifford Realty Corp.,* 327 Pa.Super. 377, 386, 476 A.2d 1, 5 (1984). The court, as a matter of law, determines the existence of an ambiguity, whereas the resolution of conflicting parol evidence, admitted to clarify the ambiguity, rests with the trier of fact. *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 200, 519 A.2d 385, 390 (1986).

Plaintiff Herr argues that the accident which caused his injuries was a covered risk under Grier's insurance policy. According to plaintiff, Grier's policy with Pennland provided coverage to Grier for liability incurred by him for any "auto accident." In this regard, plaintiff argues that the term "auto" is ambiguous. Plaintiff notes that in the same policy, Pennland excludes coverage for a motorized vehicle having fewer than four wheels. Applying the principle of *expressio unius est esclusio alterius* to ascertain the intent of the parties, plaintiff avers that by excluding vehicles with fewer than four wheels, the parties intended coverage for all vehicles having four wheels or more including golf carts.

In the instant case, the insurance policy does not define the term "auto." In the absence of technical terminology, we give the words used in the agreement their plain and ordinary meaning. *Warren v. Greenfield,* 407 Pa.Super. 600, 607, 595 A.2d 1308, 1311–12 (1991). The dictionary defines "auto" as the shortened version of "automobile," and defines the term "automobile" as a

> 4–wheeled automotive vehicle *designed for passenger transportation on streets and roadways* and commonly propelled by an internal-combustion engine using a volatile fuel (as gasoline)—called also car or esp. Brit. motorcar.

Webster's Third New International Dictionary (1981) (emphasis added). In contrast, the dictionary defines the term golf cart as follows:

1: a small cart for wheeling a golf bag around a golf course
2: a motorized cart for carrying a golfer and his equipment over a golf course.

Webster's New Collegiate Dictionary (1973). Keeping these definitions in mind, we find that Pennland's use of the term "auto accident" in its policy is clear and unambiguous. Giving the term "auto accident" its plain and ordinary meaning, we conclude that the term cannot possibly be interpreted as providing coverage for an accident involving a golf cart not designed for or operated on public highways. *See Warren v. Greenfield,* 407 Pa.Super. at 607, 595 A.2d at 1312 (when the words of a contract are unequivocal, they speak for themselves, and a meaning other than that expressed cannot and will not be given to them). Because the policy's coverage for "auto accident[s]" does not include an accident involving golf carts, we find no error on the part of the trial court in granting summary judgment in favor of Pennland on this claim.

■ Plaintiff next argues that the uninsured/underinsured (UM/UIM) insurance policy provided by appellee Pennland is invalid. In this regard, plaintiff insists that Pennland's policy provision excluding coverage for vehicles or equipment "[d]esigned mainly for use off public roads while not on public roads" is void because it provides less coverage than that required by the Motor Vehicle Financial Responsibility Law (MVFRL). 75 Pa.C.S.A. § 1701 *et seq.* We disagree.

In support of their argument, plaintiffs state that in 1990, the legislature amended the MVFRL to add the term "private passenger motor vehicle" to its list of definitions in 75 Pa. C.S.A. § 1702. The legislature defined the term "private passenger motor vehicle" as a "four-wheel motor vehicle, except recreational vehicles not intended for highway use." 75 Pa.C.S.A. § 1702. The legislature then used this narrowly defined term in describing coverage under the full tort and limited tort options. Plaintiffs note, however, that the legisla-

ture did not amend Sections 1731(b) and (c) to limit UM/UIM coverage to accidents involving "private passenger motor vehicles." Instead, the legislature applied the broader term "motor vehicles" in describing coverage requirements under the UM/UIM provisions. Plaintiffs argue that a golf cart falls within the definition of "motor vehicle" and accordingly, the MVFRL requires coverage under the UM/UIM provisions for golf cart accidents.

The Superior Court recently addressed a similar question in *Schoffstall v. Prudential Property & Casualty Ins. Co.*, 446 Pa.Super. 558, 667 A.2d 748 (1995). In that case, we were called upon to determine whether the Motor Vehicle Financial Responsibility Law renders a claimant ineligible for benefits if he or she is injured by a race car not operated on public highways. The plaintiffs in *Schoffstall* were injured by debris from an accident at the Port Royal Speedway while attending the race as spectators. This court, in analyzing whether coverage for race car accidents falls within the purview of the MVFRL, opined:

> [W]e note initially that the Pennsylvania Code defines a motor vehicle as "[a] vehicle of a kind required to be registered under 75 Pa.C.S.A. § 1301–1377 (relating to registration of vehicles)." 31 Pa.Code § 66.1. The MVFRL specifically excludes from the list of vehicles required to be registered, and for which insurance need to be issued, "recreational vehicles not intended for highway use." 75 Pa.C.S.A. §§ 1711, 1712 (Supp. 1995–96). Our General Assembly enacted the now repealed No–Fault Act and the present MVFRL to regulate the maintenance and use of a motor vehicle over this Commonwealth's highways. See, e.g., *Metzel v. State Farm Mutual Ins. Co.*, 389 Pa.Super. 30, 566 A.2d 600 (1989) (Motor home parked with engine shut off was not "a vehicle" within the No Fault Act); cf. *Petties v. Petties*, 210 N.J.Super. 14, 509 A.2d 190 (1986) (Family members killed by carbon monoxide while asleep above garage were not "pedestrians" under New Jersey's Automobile Reparation Reform Act covering injuries sus-

tained while occupying, entering into, alighting from or using automobiles).

The fact that the "racecar" causing the appellants' injuries *could have been* driven on a highway and the fact that it was self-propelled to fit within the definition of "motor vehicle" contained in the Motor Vehicle Code are not dispositive. We look to the fact that *at the time of the accident the vehicle was being operated exclusively off a public highway without insurance or registration as a recreational vehicle.* See *Bills [v. Nationwide Mutual Ins. Co.*, 317 Pa.Super. 188, 463 A.2d 1148 (1983) ], supra. Further, from a common sense perspective, we cannot lose sight of the context in which the appellants sustained injury from flying debris while "spectators" in the stands at a Fourth of July celebration in a location open to the public and for which entertainment in the form of a car race was part of the festivities.

*Id.* at ——, 667 A.2d at 750 (footnotes omitted, emphasis in original). Thus, the issue of coverage under the MVFRL in the *Schoffstall* case turns upon a determination of whether the race car is "[a] vehicle of a kind required to be registered under 75 Pa.C.S.A. § 1301–1377 (relating to registration of vehicles)." *Id.* We find this same analysis to be applicable in the instant case.

Here, plaintiffs do not aver that the golf cart in question is "[a] vehicle of a kind required to be registered under 75 Pa.C.S.A. § 1301–1377 (relating to registration of vehicles). In fact, plaintiffs aver no facts which would bring the golf cart in question within the ambit of the MVFRL. Because Pennland's exclusion is not in violation of the MVFRL, we find no error on the part of the trial court in granting summary judgment in favor of Pennland.

Order affirmed.