450 So.2d 1202 (1984)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Kolleen M. DAVELLA, Appellee.
No. 83-1724.
District Court of Appeal of Florida, Third District.
May 15, 1984.
Rehearing Denied June 15, 1984.
Barnett & Clark and James Clark, Coral Gables, for appellant.
Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel S. Perwin, *1203 Miami, Beckham & McAliley, Jacksonville, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
PER CURIAM.
Appellant seeks review of a final judgment for the plaintiff entered by the trial court pursuant to a directed verdict at the close of all the evidence in an action wherein the plaintiff sought a declaratory judgment on the question of the amount of uninsured motorist coverage in a policy issued by the appellant.
In November 1979, the plaintiff purchased from the defendant, State Farm, an automobile insurance policy. The policy had liability limits of $100,000 and uninsured motorists limits of $15,000. At the time of the purchase of the policy, the plaintiff was a resident of Colorado and the policy was delivered in Colorado. The policy was written for a 6 month period to expire May 12, 1980. Two weeks after she received the policy the plaintiff was transferred to Monroe County, Florida, for employment purposes. She notified her Colorado agent of her Monroe County address and in March, 1980, she received a letter from State Farm to contact a local Florida agent and a Florida policy with $100,000 limits for both liability and uninsured motorists coverage. At this time the Colorado policy had almost 3 months to run and as she wasn't sure about remaining in Florida, she returned the Florida policy informing State Farm there was some question as to whether or not she would remain in Florida so she wanted the Colorado policy reinstated. At the expiration of that policy in May, 1980, if she were still in Florida, she would then accept a Florida policy. The policy remained as a Colorado policy until the accident giving rise to this claim which occurred on November 26, 1980. During the interim, the policy had been renewed for the May-November 1980 term and the November, 1980  May 1981 term and all premiums were paid. After the accident State Farm contended the plaintiff had $15,000 limits under the policy written and delivered in Colorado. The plaintiff contended she was entitled to $100,000 limits pursuant to § 627.727 Fla. Stat. (1980 Supp.). The instant litigation ensued resulting in a directed verdict for the plaintiff holding she had $100,000  $300,000 uninsured motorists coverage.
The appellant contends that the trial court erred in failing to direct a verdict in the appellant's favor when the policy sued upon was a Colorado policy purchased and delivered in Colorado. The $15,000 limit contained in that policy is controlling and is not changed by Florida law. We agree. This was a Colorado policy when issued and continued as such upon renewal; the policy holder having specifically rejected a Florida policy. Goodman v. Olsen, 305 So.2d 753 (Fla. 1975); Jemco, Inc. v. United Parcel Service, Inc., 400 So.2d 499 (Fla. 3d DCA 1981); Cf Burnett v. Fireman's Fund Insurance Company, 408 So.2d 838 (Fla. 2d DCA 1982).
The Colorado policy originally issued was renewed at six month intervals. After the Florida policy was rejected by Davella, no other policy was issued. The general rule in such situations is stated as follows:
"If a court follows the rule that the law governing the construction of an insurance contract is that of the state in which the contract was made, and if an arrangement subsequent to the making of the original insurance contract is treated as a new and independent contract, then the law of the state in which the subsequent arrangement was made, rather than the law of the state in which the original contract was made, will be controlling as to matters involved in the construction of the contract. If, on the other hand, the subsequent arrangement is treated merely as an incident or continuation of the original contract, then the law of the state in which the original contract was made, rather than the law of the state in which the subsequent arrangement was made, will govern as to matter of construction."

*1204 and that,
... "the payment of renewal premiums in a different state from that in which the original contract was made did not constitute the making of a new and independent contract and that the governing law was that which governed the original policy."
Annot, 3 A.L.R. 3rd 646, 649 (1965).
On the date of loss, the original Colorado policy was still in effect. The Florida insurance code uninsured motorist statute specifically, applies only to policies delivered or issued for delivery in Florida, therefore these statutes have no applicability in the instant case. See, Sections 627.401 and 627.727, Fla. Stat. (1979).
Appellee argues that the premium notices sent Davella by her Colorado agent constitute "delivery" of a policy in Florida because they "evidence the insurance contract and itemized the coverage".
If the brochures and booklets referred to in Blue Cross of Florida, Inc. v. Turner, 363 So.2d 133 (Fla. 1st DCA 1978) and Albury v. Equitable Life Assurance Society of the United States, 409 So.2d 235 (Fla. 1st DCA 1982) are not defined "policies", the simple notices of premium sent in this case cannot suffice as policies.
The appellee replies strongly on Gillen v. United States Automobile Association, 300 So.2d 3 (Fla., 1974) and Decker v. Great American Insurance Company, 392 So.2d 965 (Fla. 2d DCA 1980). We find these cases not to be applicable because when the policies therein were issued the insured were permanent residents of Florida or moved to Florida and notified the insurer of their intent to become permanent residents. The instant case differs from Gillen and Decker in that the insured advised the company on several occasions that her move to Florida was temporary and that she wanted to keep her Colorado policy intact. She continued to deal with her Colorado agent and wrote to him, not her Florida agent, to request her renewal policies. She also specifically rejected a Florida insurance policy.[1]
Finding that this was a Colorado policy, the trial court committed error in granting the appellee's motion for directed verdict and denying the appellant's motion for directed verdict and therefore we reverse the declaratory judgment under review with *1205 directions to enter a directed verdict for the defendants in the trial court.
Reversed and remanded with directions.
DANIEL S. PEARSON, Judge, dissenting.
The majority concludes that the appellee's reliance on Gillen v. United States Automobile Ass'n, 300 So.2d 3 (Fla. 1974), and Decker v. Great American Insurance Co., 392 So.2d 965 (Fla. 2d DCA 1980), is misplaced because "when the policies therein were issued the insured[s] were permanent residents of Florida or moved to Florida and notified the insurer[s] of their intent to become permanent residents," whereas, in the present case, according to the majority, the insured "advised the company on several occasions that her move to Florida was temporary and that she wanted to keep her Colorado policy intact," "continued to deal with her Colorado agent and wrote to him, not her Florida agent, to request her renewal policies," and "specifically rejected a Florida insurance policy." Indeed, all of these things happened at one time or another, but they hardly establish what the situation was as of November 1980 when the policy in question was issued.
Kolleen Davella and her husband moved from California to Aspen, Colorado in June of 1979. In November of 1979, Davella told her State Farm agent in Colorado that she wanted "full coverage" on the cars then owned by her, namely, a 1977 Toyota Celica and a 1975 Chevrolet. At the time of this request, Davella and her husband had already applied for a transfer from their postal service jobs in Colorado to South Florida, but did not know whether or when their applications would be acted on. State Farm issued Davella a six-month Colorado policy, running from November 12, 1979, to May 12, 1980.
Two weeks later, the Davellas were transferred to Monroe County, Florida, and they gave their Colorado State Farm agent their new Florida address. The Davellas were hoping to stay in Florida, and thus renewed their drivers' licenses in Florida and registered the Toyota in Florida. However, they encountered problems securing housing and a mortgage in Florida, and acknowledged the possibility that they might have to move back to Colorado.
In the winter of 1979, with three months still to run on the Colorado policy, Davella received in Florida a declaration page of a new Florida policy with uninsured motorist coverage of $100,000, a balance-due notice from State Farm on this new policy, and a letter from State Farm telling her to contact her local agent. As instructed, Davella went to see a State Farm agent in Florida and told the agent "that there was, indeed, a possibility that I would be returning to Colorado, that I didn't want the policies touched until the expiration date... ." In February of 1980, Davella sent a letter to the State Farm office in Winter Haven in which she wrote:
"I didn't ask my policies to be turned over to Florida. I asked that it be kept in Colorado until the expiration. Then, if I'm still residing here, you can switch them over. I might not be here. I may be back in Colorado. Also, you sent a refund of $6.98 with no letters. I also don't pay. I'm already paid up for six months until May the 12th. Please respond. Kolleen Davella." (emphasis supplied).
Davella testified that she wrote this letter "to make it explicitly clear that [she] wanted the policies changed at the expiration date," but not sooner, because she was still unsure of her status in Florida.[2] She received no response to her letter.
In April 1980, Davella sold the 1975 Chevrolet and wrote to her Colorado agent that she wanted the policy on that car cancelled and a refund. On April 22, 1980, the agent wrote Mrs. Davella telling her *1206 that her Colorado policy had been transferred to Florida in February of 1980 because the Colorado agent no longer had jurisdiction over the policy and to contact an agent in Florida. On April 25, 1980, Davella wrote to the Florida State Farm office about the mix-up:
"I was just notified by Greenwood Springs, Colorado State Farm agent that he turned my policy over to you on 02/12/80, which my agent was told on that date not to change over my policy, because I was unsure that I was going to stay here in Key Colony Beach. It appears they did it, anyway. I wrote them on 4/10 to cancel the Chevy policy as of 4/12, because we no longer have the car and, therefore, they owe me a refund of 36 days and I want it. On the Celica  the policy on the Celica is to remain active and is due to be expired on 5/18. Please send me a renewal bill, but I don't expect to lose on this mix-up when the policy on the Chevy was cancelled 4/12 with Colorado headquarters. If they played around with the location of my policy, I don't expect to lose on this. Please respond. Kolleen Davella."
Again, Mrs. Davella received no response to her letter. Because her then-existing Colorado policy was to expire in a couple of weeks, she called the State Farm office in Winter Haven and was told to call the Miami office. She obeyed and talked to one Jim Dye, telling him that her policy would expire in a week and that she was afraid she would be uninsured. Dye said he would check out the situation, then called her back and "said that he fully understood the confusion and that he would take care of it and that he would get a corrected Florida policy ... ." (emphasis supplied). Davella asked Dye to send her a letter to that effect, and he wrote back on May 7, 1980, five days before the expiration of the Colorado policy, as follows: "We are aware of the confusion between your Colorado policy and your transfer to Florida. You do have coverage from State Farm and will be receiving a corrected policy."
This letter, as all other communications to Davella from State Farm, was sent to her address in Monroe County. Since moving to Florida in November of 1979, Davella had never returned to Colorado and had remained continuously residing in Monroe County, where her Toyota was garaged throughout this entire period of time. Thus, although State Farm knew where Davella was, it never fulfilled its promise, made by Dye, to send Davella a corrected policy. Between the time of this May 7, 1980, letter and Mrs. Davella's accident on November 26, 1980, she never received any corrected policy. What she did receive was a balance-due notice dated May 19, 1980, telling her that she owed $119.15 for the premium. Mrs. Davella paid the bill, but she still received no policy.
Mrs. Davella had no further contact with State Farm until October 1, 1980, when she wrote her Colorado State Farm agent a letter regarding life insurance. In the course of that letter, she told the Colorado agent that her present automobile policy would expire in mid-November of 1980, and asked him to send her a renewal. She testified that she wrote to the Colorado agent because the Florida agent  Dye  had never responded to her or sent her the policy which he had promised. The Colorado agent wrote back on October 21, 1980, telling Davella that payment for a new automobile policy was due November 12, 1980, and that if Davella sent the Colorado agent the money, he would send her the policy. She then received from Colorado a premium notice dated November 12, 1980, and she sent a check to Colorado for the amount owed. Davella testified that she sent the check to Colorado because "I thought that that was the headquarters of State Farm."[3] Once again, Davella did not receive the policy for the six-month period *1207 between November 12, 1980, and May 12, 1981.
Thus, contrary to the majority's view, it is far from clear that as of November 12, 1980, or, for that matter, May 12, 1980, Mrs. Davella was not a permanent resident of Florida, had not notified State Farm of her intent to be one, had not told State Farm she wanted a Florida policy, or had rejected a Florida insurance policy. Davella's actions before May 12, 1980, prove little or nothing about her later status or intentions, and her continued dealings with the Colorado office out of frustration with Florida's inaction and broken promises hardly establishes that the policies issued on May 12, 1980, and November 12, 1980, which were never delivered, were not "issued for delivery" in Florida so as to make Section 627.727, Florida Statutes (Supp. 1980), applicable.
Even if, arguendo, it is not clear that Mrs. Davella requested that a Florida policy be issued to her as of May 12, 1980, if she were then, which she was, residing in Florida, the very most that can be said of the evidence in this record is that Davella was not entitled to a directed verdict in her favor, not, as the majority concludes, that the insurance company was entitled to a directed verdict in its favor.
NOTES
[1] Davella refused this "Florida" policy with the following written explanation to State Farm:

"I didn't ask my policies to be turned over to Fla. they're to be kept in Colo until the expiration then if I'm still residing here you can switch them over I may not be here I may be back in Colo  I also don't plan on paying another 10¢ if the rates are higher here I already payed (sic) & I'm payed (sic) up till May 12 ..."
State Farm, then, pursuant to its insured's request, transferred the Florida policy back to Colorado in March of 1980, and reinstated the original Colorado policy.
Sometime in April of 1980, Davella had some conversation and dealings with her Colorado local State Farm agent concerning another vehicle of hers. She then received a letter from that agent informing her that her policy was still in Florida and that she should deal with her Florida agent.
Upon learning that information, Davella, on April 25th, 1980, only seventeen days before the expiration date of her Colorado policy, wrote State Farm's Florida regional office complaining that her policy had been turned over to Florida and again reiterating that,
"... my agent was told ... not to change over my policy because I was unsure if I was going to stay here ..."
In response to that complaint, a State Farm agent in Miami, one Jim Dye wrote her a memo which state:
"We are aware of the confusion between your Colo policies and your transfer to Fla. You do have coverage with State Farm and will soon be receiving your corrected policies."
Dye testified that the memo was written to Davella after a telephone conversation where Davella stated she wanted her policy to stay in Colorado.
Davella next received a premium notice for her Colorado policy from Greely, Colorado. She paid her renewal premium and sent it to Greely, Colorado.
In October of 1980, while dealing with her Colorado agent about a life insurance policy, Davella wrote a letter to him which stated:
"... concerning my automobile policy which comes due in November Please send me the renewal as early as possible as last year, six months ago, it was quite a mix up ..."
[2] Mrs. Davella testified:

"My status at this point still was I didn't really know where I was going to be. The policy only had two and a half months left and I really felt that it shouldn't be interrupted until we could find out what we were doing. We hadn't even secured housing. And that's what my situation was at that time.
[3] In her letter of April 25, 1980, to the Florida State Farm office, supra, Mrs. Davella had written that her policy on the Chevrolet had been cancelled "with Colorado headquarters." This is consistent with Mrs. Davella's trial testimony that she considered Colorado to be State Farm headquarters.