665 A.2d 322

PROGRESSIVE CASUALTY INSURANCE COMPANY

v.

George E. DUNN, et al.

George E. DUNN

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.

No. 1875, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Sept. 29, 1995.

**522**

Angus R. Everton (Diane S. Deros and Mason, Ketterman & Morgan, on the brief), Baltimore, for appellant, Progressive.

Michael R. Cogan (Dwayne L. Garrett and Protas & Spivok, Chartered, on the brief), Bethesda, for appellant/appellee, George Dunn.

Pamela Randi Johnson (Budow & Noble, P.C., on the brief), Ellicott City, for appellee, Nationwide.

Allen W. Cohen (Cohen, Bennett & Greene, P.A., on the brief), Annapolis, for appellee, Christina H. Dunn.

Cassandra P. Hicks (Pasternak & Fidis, P.A., on the brief), Bethesda, for appellee, Silbaughs.

Argued before WILNER, C.J., and WENNER and CATHELL, JJ.

WILNER, Chief Judge.

This case arises out of an accident that occurred on July 17, 1989. In an amended complaint filed in the Circuit Court for Anne Arundel County, Lawrence and Alice Silbaugh alleged that, as Mrs. Silbaugh was standing in the driveway of her property, she was struck by a golf cart owned by her neighbors, George and Chris Dunn, and driven by Mr. Dunn. The Silbaughs sued the Dunns for the injuries sustained by Mrs. Silbaugh. The suit was based on the alleged negligence of Mr. Dunn in his operation of the cart.

We are not concerned here, directly, with the accident. The issues before us relate to insurance coverage: whether the Dunns are entitled to a defense, and to indemnity, by Progressive Casualty Insurance Company (Progressive), their automobile insurance carrier, and by Nationwide Mutual Fire Insurance Company (Nationwide), their homeowner insurance carrier. In a declaratory judgment proceeding, the Circuit Court for Anne Arundel County, acting on cross-motions for sum-

mary judgment, declared that Progressive was liable for both the defense and indemnity (up to the policy limits) and that Nationwide was not liable. From the judgments entered in conformance with those declarations, Mr. Dunn and Progressive have appealed. Dunn asserts that the court erred in finding no coverage under the Nationwide policy; Progressive claims that the court erred in finding coverage under its policy.

We believe that the court was correct in its construction of the Nationwide policy but incorrect in its construction of the Progressive policy. We therefore shall affirm the judgment as to the one but reverse and remand with respect to the other.

## THE NATIONWIDE POLICY

### The Policy Provisions

 In the section of the policy dealing with liability coverage (Coverage E), Nationwide agreed to pay damages Dunn is legally obligated to pay due to an "occurrence". An "occurrence" is defined as bodily injury or property damage resulting from an accident. In the section on exclusions, however, the policy states that Coverage E does not apply to bodily injury or property damage arising out of the ownership, maintenance, or use of "a **motor vehicle** owned or operated by . . . an **insured.**" [1]

The term "motor vehicle" is defined as including "a motorized golf cart, snowmobile or other motorized land vehicle owned by an **insured** and designed for recreational use off public roads, while off an **insured location.**" The definition continues that "[a] motorized golf cart while being operated to or from, or on the premises of a golf course is not a **motor vehicle.**" Finally, the policy defines "insured location" as meaning the "residence premises" and certain other property used by the insured as a residence or rented to the insured.

---

**1.** The highlighted words in our quotations from the policy are highlighted in the policy itself. Most likely, that is because those words are defined terms in the policy.

## Discussion

Nationwide's defense is straightforward. According to the amended complaint and other relevant documents produced in the as-yet-untried Silbaugh suit, the accident arose from the use by Dunn of a motorized golf cart off the Dunns' residence premises, on no other insured location, and not while on or going to or from a golf course; hence, no coverage and no duty to defend.

Dunn's response, in essence, is that, while the policy language may be clear, its application to the facts is not, and therefore the case should not have been resolved on summary judgment.

He first attacks Nationwide's characterization of the vehicle as a "golf cart." Ignoring the fact that he himself characterized it as a "golf cart" in his answers to interrogatories filed by the Silbaughs in the negligence case and by Progressive in this case,[2] he now contends that the vehicle was not a golf cart, but rather a "utility garden cart." This is based on his assertion that the vehicle was not used, or bought for use, in connection with golf but was instead used on his property for gardening and other household uses.

In an effort to bring the vehicle affirmatively within the policy, he points to a provision excluding coverage for **"motor vehicles,** except trailers and those used to service an **insured's** residence." Contending that this cart was used to service his residence, he asserts that it is therefore not a motor vehicle excluded from coverage and, for that reason, must be covered. What he neglects to mention, for it is fatal to his position, is that the language he relies on appears in an

---

2. In response to Progressive's interrogatory asking how the accident occurred, Dunn stated that he, his wife, and his daughter "were riding in a golf cart I had recently purchased.:.." The actual collision happened when he attempted to drive the cart with his left foot "[a]s I have done and as other golfers do frequently for a short move of the cart." At least five more times in his answers, he referred to the cart as a "golf cart." We note that his wife, Chris, in an affidavit attached to her motion for summary judgment against Progressive, also consistently characterized the vehicle as a golf cart.

exclusion to Coverage C, for personal property. It has no relevance to Coverage E (liability coverage).

Having himself, under oath, described the vehicle as a golf cart, Dunn cannot reasonably contest the court's finding that it was indeed a golf cart. That he may have used it for some other purpose does not cause it to lose its character as a motorized golf cart. Moreover, even if, because of its alternative use, it was not a golf cart, the vehicle would certainly qualify as an "other motorized land vehicle owned by an **insured** and designed for recreational use off public roads." As such, it would still fall within the definition of "motor vehicle" and thus be excluded from liability coverage.

Dunn next contends that there is some ambiguity or dispute over whether the cart was off the insured premises at the time of the accident. In their amended complaint and in their affidavits, the Silbaughs averred that Mrs. Silbaugh was standing in the driveway of their residence when she was struck. In a Statement of Material Facts Not In Dispute, included in a memorandum filed in support of his motion for summary judgment, Mr. Dunn acknowledged that the accident occurred "in front of Mrs. Silbaugh's house," which was "located directly across a dead end cul-de-sac from the Dunn house." In his brief in this Court, he concedes that he was "a few feet from the edge of his property line" when the accident happened. Yet, for reasons that escape us, he contends that the accident may have happened on the "residence premises" or on some zone around it included within the ambit of "insured location." There is utterly no factual support in this record for such a suggestion.

It is clear, as a matter of law, that there was no liability coverage, and no potentiality of liability coverage, under the Nationwide policy. Nationwide therefore had no duty to defend and no obligation to indemnify Dunn.

## THE PROGRESSIVE POLICY

### The Policy Provisions

The Progressive policy provided liability coverage for bodily injury caused by accident and arising out of the ownership,

maintenance, or use of the "owned automobile." The term "owned automobile" is defined as including

"a private passenger, farm or utility automobile, ownership of any of which is acquired by the named insured during the policy period, provided ... the Company insures all private passenger automobiles, farm automobiles and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the Company within 30 days following such date."

The principal issue raised by Progressive is whether the golf cart qualifies as an "owned automobile," which, in turn, depends on whether it falls within the policy definitions of private passenger, farm, or utility automobile.

A "private passenger automobile" is defined as "a four-wheel private passenger, station wagon or jeep type automobile." A "farm automobile" is defined as "an automobile of the truck type with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming." A "utility automobile" is defined as "an automobile, other than a farm automobile, with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type not used for business or commercial purposes."

### Discussion

#### *Notice*

Before considering the main issue, we take note of Progressive's assertion that it was not notified of the Dunns' acquisition of the cart prior to the accident. The Dunns do not contest that statement. The cart was acquired on July 4, 1989, which was during the policy period. The accident occurred on July 17, within 30 days after the acquisition.

The record before us does not indicate with any clarity just what notice the Dunns ever gave to Progressive. In response to Progressive's request for an admission that no request was made to add the vehicle to the policy prior to the accident, Mrs. Dunn stated that "there was no requirement to request

that said golf cart be added to the subject insurance policy since the golf cart was sold within thirty (30) days of its acquisition." In his brief in this Court, Mr. Dunn asserts, without any reference to the record, that he notified Progressive that the cart "should be considered an 'owned automobile' under the Progressive policy within 30 days of the acquisition date."

We see no relevance to the fact that notice of the acquisition did not precede the accident. The policy imposes no such requirement. The only requirement in this regard is that notice be given within 30 days after the acquisition. When this issue was raised at the hearing below, the court asked if the cart would not have been automatically insured for the first 30 days after acquisition. Counsel for Progressive indicated agreement with that view, and indeed stated that "[t]he thirty days is not dispositive of anything."

It appears to us that the point was essentially waived by that response. Even if it were not, we concur with the suggestion implicit in the question from the circuit court. Clauses such as the one at issue here have generally been construed as providing automatic coverage during the 30–day notice period. *See Inland Mut. Ins. Co. v. Stallings*, 263 F.2d 852 (4th Cir.1959); *Pendleton v. Ricca*, 232 So.2d 803 (La.App. 1970); *Missouri Managerial Corporation v. Pasqualino*, 323 S.W.2d 244 (Mo.App.1959); *Patrick v. State Farm Mut. Auto. Ins. Co.*, 90 N.J.Super. 442, 217 A.2d 909 (1966); *McCarty v. Grange Mutual Casualty Co.*, 27 Ohio App.2d 181, 273 N.E.2d 345 (1971); 6B Appleman, *Insurance Law & Practice* § 4293, p. 182 (1979). Indeed, that is the only sensible way to read such a clause.

### Was The Cart An Automobile?

■ The evidence showed that the golf cart had four wheels, was propelled by an electric motor, was designed to carry passengers in the front compartment and golf clubs, garden supplies, or trash cans in the rear bed, had a gross hauling weight of less than 1,500 pounds, and was not used for

business or commercial purposes by the Dunns. In remarks from the bench explaining the decision later incorporated in the declaratory judgment, the court declared that the cart was "either a private passenger vehicle or it's a utility vehicle" because it had four wheels, was motorized, carried passengers, and hauled items with a weight under 1,500 pounds.

Progressive's substantive defense is that the cart was not an "automobile," as that term is commonly used. Citing a number of dictionary definitions, it urges that an automobile is a vehicle designed or intended for travel on the streets and highways, and that the golf cart does not meet that test. It does not have the kind of equipment required for automobiles (headlights, seat belts, etc.) and one does not have to possess a driver's license to operate it. Its purpose is to move golfers around a golf course, not to convey them on the public highways.

The word "automobile," standing alone, is not defined in the policy. The operative term is "owned automobile," which is defined as including a private passenger automobile, a farm automobile, and a utility automobile. As we indicated, those terms are also defined. Each of these definitions hinges, however, on the vehicle first qualifying as an automobile. The other words are all adjectival in nature, limiting the noun "automobile."

The rules governing the construction of insurance policies under Maryland law were succinctly stated by the Court of Appeals in *Cheney v. Bell National Life,* 315 Md. 761, 766–67, 556 A.2d 1135 (1989):

"In the interpretation of the meaning of an insurance contract, we accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense. [ (citation omitted.) ] Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be

ascertained if reasonably possible from the policy as a whole. In the event of an ambiguity, however, extrinsic and parol evidence may be considered. If no extrinsic or parol evidence is introduced, or if the ambiguity remains after consideration of extrinsic or parol evidence that is introduced, it will be construed against the insurer as the drafter of the instrument."

*See also W.W. Schlosser Co., Inc. v. INA,* 325 Md. 301, 600 A.2d 836 (1992).

The first directive stated in *Cheney* is to give words their usual, ordinary, and accepted meaning. In *Pacific Indem. v. Interstate Fire & Cas.,* 302 Md. 383, 388, 488 A.2d 486 (1985), the Court explained that the test for doing so is to determine "what meaning a reasonably prudent layperson would attach to the term" and that resort to dictionary definitions is appropriate for that purpose.

We observe that no extrinsic or parol evidence was offered below to indicate that the parties intended the word "automobile," as used in the policy, either alone or in connection with the various adjectives included in the subordinate definitions, to mean anything special. We therefore must accord the word its usual, ordinary, and accepted meaning. As Progressive points out, most standard dictionaries define the term as a vehicle, usually four-wheeled, propelled by an engine or motor, *intended for travel on the streets and roads.* The common definition is thus more limiting than a pure extension of the Greek and Latin roots of the word (*auto* = self; *mobilis* = movable) might allow.

Any engine-driven wheeled vehicle—even an airplane or a massive earth-mover—*can* be driven on streets and roads. The test is not ultimate possibility, however, but whether the vehicle is *intended* for that mode of travel. A golf cart, of the kind described in this case, is certainly not intended for such travel. As Progressive avers, it has none of the common safety and operational features conducive to, or required for, travel on the public roads. It is designed to be an off-road vehicle, principally to transport golfers around the terrain of golf courses. This comports with the dictionary definitions of

the term, at least to the extent it is found in dictionaries. *Webster's 9th New Collegiate Dictionary* defines "golf cart" as "a small cart for wheeling a golf bag around a golf course; a motorized cart for carrying a golfer and his equipment over a golf course—called also *golf car*." The *Random House Dictionary of the English Language* contains a similar definition.

The subordinate definitions in the policy support the view that a golf cart was not intended to be covered as an "owned automobile." One would not ordinarily view a golf cart as a "private passenger, station wagon or jeep type automobile," or as "an automobile of the truck type" or "an automobile . . . of the pick-up body, sedan delivery or panel truck type." Those are the cores of the definitions of "private passenger automobile," "farm automobile," and "utility automobile." That the cart had wheels and a carrying weight of less than 1,500 pounds does not bring it within any of those definitions.

Unlike the Nationwide policy, which *did* specifically insure motorized golf carts under certain circumstances, to try to fit the cart within any of the definitions in the Progressive policy would involve driving the proverbial square peg into a round hole. Some parts of the peg may fit, but the peg as a whole clearly does not. *See Jennings v. Midville Golf Club, Inc.,* 636 A.2d 707 (R.I.1994), concluding that the "plain, ordinary, and usual meaning of auto [does not include] four-wheeled motorized golf carts."

JUDGMENT AS TO NATIONWIDE POLICY AFFIRMED; JUDGMENT AS TO PROGRESSIVE POLICY REVERSED; CASE REMANDED FOR ENTRY OF MODIFIED JUDGMENT IN CONFORMANCE WITH THIS OPINION; APPELLANTS AND CROSS–APPELLEES GEORGE AND CHRIS DUNN TO PAY THE COSTS.