**John Wade BAILEY, Plaintiff,**

v.

**NETHERLANDS INSURANCE CO. and Matthew Jensen, Defendants.**

**Case No. 6:08–cv–16–Orl–22DAB.**

United States District Court, M.D. Florida, Orlando Division.

May 21, 2009.

---

Lester A. Lewis, Lewis & Leiser, PA, Daytona Beach, FL, for Plaintiff.

Chris Nick Kolos, Holland & Knight, LLP, Orlando, FL, for Defendants.

### ORDER

ANNE C. CONWAY, District Judge.

## I. INTRODUCTION

Plaintiff John Wade Bailey ("Bailey") filed this declaratory judgment action against Defendants Netherlands Insurance Co. ("Netherlands") and Matthew Jensen

("Jensen").[1] This dispute arises from a golf cart accident that occurred on February 20, 2005, which allegedly caused injuries to Jensen. The golf cart involved in this accident was being operated by Bailey at the Daytona International Speedway in Daytona Beach, Florida. At the time of the accident, the golf cart was being operated in the infield of the speedway at the intersection of Pepsi Paddock Road and Lake Lloyd Road. (Doc. No. 3-1 ¶ 8.)

Bailey filed this declaratory judgment action under the Florida Declaratory Judgment Act, Fla. Stat. §§ 86.011–86.15, seeking a declaration that (1) the golf cart in question is a covered "auto" under a policy issued by Netherlands to High Line Performance, Inc. ("High Line") (the "Subject Policy"); (2) the term "auto" includes the golf cart operated by Bailey at the time of the incident; (3) Bailey is an insured under the commercial auto coverage policy; (4) the five exceptions referenced in Section II do not apply; and (5) Bailey is entitled to an award of attorneys' fees for his defense in the state court action. Bailey also seeks indemnification for the $800,000.00 paid by Auto–Owners Insurance Company ("AOIC") to settle Jensen's state court personal injury claim.

The parties have filed cross motions for summary judgment. Netherlands filed its motion for summary judgment (Doc. No. 32) on October 10, 2008, and Bailey filed his response to the motion (Doc. No. 37) on January 23, 2009. Bailey filed both his motion for summary judgment (Doc. No. 41) and his memorandum in support of his motion for summary judgment (Doc. No. 42) on January 28, 2009. Netherlands filed a response in opposition to Bailey's motion (Doc. No. 44) on February 9, 2009, and a reply[2] to Bailey's memorandum of law (Doc. No. 43) on February 6, 2009.

## II. BACKGROUND

The underlying complaint filed by Jensen in state court alleged alternatively and conjunctively that multiple parties were the owner of the golf cart operated by Bailey. (See Doc. No. 3 Ex. D.) These parties included Ray Maxwell, R & B Auto Body, and High Line. Netherlands issued the Subject Policy to High Line for the period of September 22, 2004, to September 22, 2005. Several provisions of the policy are relevant to this matter. Under the heading "LIABILITY COVERAGE," the policy states:

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

. . . .

1. Who Is an Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if

---

1. The Court terminated Defendant Matthew Jensen as a Defendant in this case pursuant to Bailey's Amended Complaint. (See Doc. No. 27.)

2. The Court granted Netherlands leave to file a reply on January 28, 2009. (Doc. No. 40.)

the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c.   Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(Doc. No. 3 Ex. D pp. 158–59.)  The policy defines certain words and phrases in the section labeled "DEFINITIONS," which states in relevant part:

B.   "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

(*Id.* at 167.)

The primary dispute between the parties is whether Bailey was operating a covered "auto" at the time of the accident resulting in injury to Jensen and whether Bailey is an "insured" under the Subject Policy.

## III.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.' "  *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir.1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds*, 30 F.3d 1347 (11th Cir.1994)).  "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor."  *Cohen*, 83 F.3d at 1349.  The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party.  *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993).

## IV.  ANALYSIS

### A.   Applicability of North Carolina Law

On a motion for summary judgment, the materiality of facts is determined with reference to the applicable substantive law.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).  In the instant action, the parties dispute whether the Court should apply North Carolina or Florida law in considering Bailey's claims.  A federal court sitting in diversity is required to apply the substantive law of the forum state in determining conflict-of-law issues.  *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir.1995).  Accordingly, Florida's choice-of-law rules govern this issue.

1336

The Subject Policy did not include a choice of law provision. The Subject Policy was issued in North Carolina, and the insured, High Line, is located in North Carolina. On the other hand, the accident occurred in Volusia County, Florida. Netherlands argues that the doctrine of lex loci contractus dictates that North Carolina law should apply to the interpretation of the Subject Policy. As stated by the Eleventh Circuit, "the Florida Supreme Court has unambiguously indicated its intent ... to adhere to the traditional rule of lex loci contractus." *Id.* Pursuant to this doctrine, "in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract is made, i.e., where the last act necessary to complete the contract is done." *Id.* Because the Subject Policy was executed in North Carolina, Netherlands argues that North Carolina law should control. (*See* Doc. No. 32 p. 6.)

Bailey argues that under Florida law, "if an arrangement subsequent to the making of the original insurance contract is treated as a new and independent contract, then the law of the state in which the subsequent arrangement was made, rather than the law of the state in which the original contract was made, will be controlling as to matters involved in the construction of the contract." (Doc. No. 37 pp. 7–8) (quoting *State Farm Mut. Auto. Ins. Co. v. Davella*, 450 So.2d 1202, 1203 (Fla. 3rd DCA 1984)). Bailey maintains that because a subsequent agreement was issued in Florida, Florida law should apply. Specifically, Bailey points to a Certificate of Liability Insurance (the "Certificate") issued on January 6, 2005. (*See* Doc. No. 38 Ex. 1.)

Netherlands responds by arguing that Bailey mischaracterizes the Certificate as a "subsequent agreement" concerning the Subject Policy. Netherlands points out that the court in *Davella* also noted that if "the subsequent arrangement is treated merely as an incident or continuation of the original contract, then the law of the state in which the original contract was made, rather than the law of the state in which the subsequent arrangement was made, will govern as to matter of construction." 450 So.2d at 1203. According to Netherlands, the Certificate is a mere incident of the original contract, and thus governed by North Carolina law. In support of its argument, Netherlands points to page 2 of the Certificate, which reads: "The Certificate of Insurance ... does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon." (Doc No. 38 Ex. 1 p. 2.) Netherlands also maintains that the Certificate was not issued in Florida as suggested by Bailey, but in North Carolina where the underlying policy was sold.

It is well-settled that a certificate of insurance is not part of an insurance contract. *See Boseman v. Conn. Gen. Life Ins. Co.*, 301 U.S. 196, 203, 57 S.Ct. 686, 81 L.Ed. 1036 (1937) (holding that delivery of the certificate in Texas had no bearing upon the question whether Texas or another state's law applies); *U.S. Pipe & Foundry Co. v. U.S. Fid. & Guar. Co.*, 505 F.2d 88, 89 (5th Cir.1974) (observing that a certificate of insurance "simply provides a method whereby [an insured] can show [a third party] that he has complied with a [contractual] provision requiring that insurance be obtained by the [insured]"); *Udeobong v. Sec. of Health & Human Serv.*, No. H–06–3197, 2008 WL 4093688 at

*4 (S.D.Tex. Aug. 28, 2008) ("[A] certificate of insurance is not part of the contract of, or necessary to, the insurance."); *Poling v. N. Am. Life and Cas. Co.*, 593 P.2d 568, 572 (Wyo.1979) ("We adopt ... the rule that the certificate of insurance is evidence of coverage only."). Accordingly, the Court finds that, contrary to Bailey's contention, the Certificate has no bearing on which State's substantive law should apply. Because the Subject Policy was executed in North Carolina, North Carolina law controls.

### B. Cross Motions for Summary Judgment

#### 2. Defendant Netherlands' Motion for Summary Judgment

Netherlands moves for summary judgment on the sole ground that the golf cart is not an "auto" under the Subject Policy. Accordingly, Netherlands argues it is not liable for any claims arising from the February 20, 2005 accident. (Doc. No. 32 p. 1.) Netherlands maintains that because North Carolina courts have not addressed the issue of whether a golf cart is an "auto" or a "motor vehicle designed for travel on public roads" for purposes of insurance coverage, this Court should look to the case law of other jurisdictions that have examined similar policy provisions. (Doc. No. 32 pp. 6–7.) In its motion, Netherlands notes several other cases from jurisdictions outside North Carolina that

have specifically held that a golf cart is not a motor vehicle for purposes of insurance coverage.[3] (*See* Doc. No. 32 p. 10.) Moreover, Netherlands argues that even if this Court determines that the subject golf cart is a "motor vehicle" under North Carolina law, it is not "designed for travel on public roads" and thus is not covered by the Subject Policy. (*Id.* at 14.)

#### 3. Plaintiff Bailey's Motion for Summary Judgment

Bailey moves for summary judgment declaring that he was an "insured" under the Subject Policy and he was operating a covered "auto" as defined by the terms of the Subject Policy. (Doc. No. 41 ¶ 15.) Bailey maintains that, provided there is a factual determination that High Line owned the golf cart, Bailey qualifies as an "insured" under the Subject Policy. (Doc. No. 42 p. 2.) In support of his argument that the golf cart is a covered "auto," Bailey asserts that common sense establishes that a golf cart is a motor vehicle. (*Id.* at 4.) Further, Bailey asserts that the golf cart was designed for travel on public roads as evidenced by the fact that, at the time of the accident, it was being operated on a public road. (*Id.* at 6.) Finally, the Court notes that Bailey did not file any evidence in support of his motion.

### C. Whether the Golf Cart is a Covered "Auto" Under the Subject Policy

■ Assuming the ultimate finder of fact determines that Bailey qualifies as an

---

**3.** *See e.g., Herr v. Grier*, 448 Pa.Super. 216, 671 A.2d 224, 226 (1995) ("Giving the term 'auto accident' its plain and ordinary meaning, we conclude that the term cannot possibly be interpreted as providing coverage for an accident involving a golf cart not designed for or operated on public highways."), *disagreed with on other grounds, Burdick v. Erie Ins. Group*, 946 A.2d 1106, 1110 n. 6 (Pa.Super.2008) ("We express no opinion concerning the panel's conclusion that a golf cart was not an 'automobile.'"); *Jennings v. Midville*

*Golf Club, Inc.*, 636 A.2d 707, 708 (R.I.1994) ("We do not think that the plain, ordinary, and usual meaning of auto includes four-wheeled, motorized golf carts. We do not believe that the policy covers all four-wheeled motor vehicles; otherwise, the policy would cover Kennedy if she had been operating, for example, a four-wheeled, motorized Matchbox car that collided with someone and caused personal injuries.") (emphasis in original).

"insured" under the Subject Policy,[4] a legal question for the Court to resolve still remains regarding whether the golf cart is a covered "auto"[5] under the Subject Policy. Resolution of this issue of law is determinative of Netherlands' duty to pay defense costs or indemnify Bailey for the settlement of Jensen's personal injury claim.

The Court finds that the golf cart is not an "auto" under the Subject Policy because it is not designed to be operated on public roads. A golf cart is designed for operation at low speed on a golf course or for similar sporting or recreational purposes, or for transportation on private property. *Herring v. Horace Mann Ins. Co.*, 795 So.2d 209, 211 (Fla. 4th DCA 2001) ("[G]olf carts ... are not generally designed for use on public roads ...."); *see also Progressive Cas. Ins. Co. v. Dunn*, 106 Md. App. 520, 665 A.2d 322, 326 (1995) ("A golf cart ... is designed to be an off-road vehicle, principally to transport golfers around the terrain of golf courses."). Further, a golf cart has none of the common safety and operational features conducive to, or required for, travel on public roads. *Dunn*, 665 A.2d at 326. There is no indication or claim that this golf cart was anything other than a standard golf cart and there is no claim that it was designed in some special manner for use on public roads. In fact, record evidence demonstrates that the golf cart was not designed or manufactured for use on public roads but for sporting or recreational use. Specifically, Netherlands presents the affidavit of Chandler Brownell ("Brownell"), who has sold Club Car golf carts[6] since 2000 and has worked on Club Car golf carts mechanically since 1992. (Doc. No. 32 Ex. A ¶ 2.) Brownell testifies that the golf cart came equipped with a warning decal near the pedals that read: "Warning. Failure to follow these instructions can cause severe injury or death.... Do not use on public roads." (*Id.* at ¶ 8.) Brownell further testifies that the golf cart did not come equipped with seat belts, side rear view mirrors, or a speedometer as required by federal Department of Transportation regulations. (*Id.* at ¶¶ 12–14.)[7] Bailey did not submit any evidence rebutting Brownell's affidavit.

Bailey argues that the golf cart should be considered an "auto" under the Subject Policy because it was operating at the time of the accident on the infield of the Daytona International Speedway, which Bailey claims is a public road since it is accessible to the general public. This argument misses the mark entirely. The test is not ultimate possibility, but whether the vehicle is *intended* or *designed* for travel on public highways. For the reasons outlined above, a golf cart of the kind described in this case is certainly not intended for such

---

4. The Court need not reach this issue because even if Bailey qualifies as an "insured" under the Subject Policy, Netherlands will not be liable if the subject golf cart is not an "auto" under the Subject Policy.

5. As stated above, the Subject Policy defines the term "auto" as "a land motor vehicle ... designed for travel on public roads."

6. Brownell states that the serial number of the golf cart indicates that it was manufactured by Club Car, Inc. (Doc. No. 32 Ex. A ¶ 6.)

7. The Court notes that Brownell was unable to personally examine the golf cart which is the subject of the present action because it "has allegedly been stolen." (*Id.* at ¶ 8.) However, Brownell states that he reviewed photographs of the golf cart and was able to identify the exact model of the golf cart through its serial numbers.

travel. Even if this argument was relevant, it is easily rebutted. According to the testimony of Paul McKitrick, the Deputy City Manager and Public Works Director of the City of Daytona Beach, Florida, all roads in the infield of the Daytona International Speedway are not public roads but are privately owned and maintained. (Doc. No. 32 Ex. D. ¶¶ 4, 6.) Bailey fails to present any evidence to discredit McKitrick's sworn testimony.

■ The Court recognizes that under North Carolina law, the duty to defend[8] and the duty to indemnify are separate obligations imposed on the insurer. *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.,* 724 F.Supp. 1173, 1177 (M.D.N.C. 1989). Because the Court finds that the golf cart is not an "auto" as that term is defined in the Subject Policy, any claim asserted against Netherlands for the February 20, 2005 accident will be frivolous. Accordingly, Netherlands had no duty to indemnify or defend Bailey in the underlying state court action.

## V. CONCLUSION

Based on the foregoing, the Court concludes that the golf cart which is the subject of the instant litigation is not an "auto" as that term is defined in the Subject Policy. As stated above, the Court need not reach the issue of whether Bailey qualifies as an "insured" under the Subject Policy. Accordingly, it is ORDERED that:

1. Defendant Netherlands Insurance Co.'s Motion for Summary Judgment (Doc. No. 32), filed on October 10, 2008, is GRANTED.

2. Plaintiff John Wade Bailey's Motion for Summary Judgment On Insurance Coverage Issues (Doc. No. 41), filed on January 28, 2009, is DENIED.

3. The Clerk shall enter a final judgment providing that Plaintiff, John Wade Bailey, shall take nothing on his claims against the Defendant, Netherlands Insurance Co. The judgment shall further provide that the Defendant shall recover its costs of action.

4. The Clerk shall close this case.

---

8. "[T]he duty to defend arises whenever there is a potential or possible liability to pay based on the allegations in the complaint and is not dependent on the probable liability to pay based on the facts ascertained through trial." *St. Paul,* 724 F.Supp. at 1177. The duty to defend is "excused only if the facts alleged in the complaint do not even arguably fall within the policy coverage and an independent investigation reveals no extrinsic facts demonstrating coverage." *Id.* at 1179.