CARNES, Circuit Judge,
dissenting:
Summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. But it is often tempting for a district court judge to grant, and for appellate judges to affirm, summary judgment even when there is conflicting evidence on a material issue. The temptation is for the judge to take on the task of finding facts and enter judgment based on what the judge believes a jury should find. By affirming the grant of summary judgment in this case, the majority follows the maxim of Lord Henry Wotton in Oscar Wilde’s The Picture of Dorian Gray: “The only way to get rid of a temptation is to yield to it.”[1]
The majority opinion is wrong to conclude that, after drawing all reasonable inferences in Anna Duckworth’s favor, no reasonable factfinder could find from the evidence that the Duckworths gave State Farm reasonable notice that they had permanently moved to Florida. The conclusion is wrong for a number of reasons, chief of which is Anna Duckworth’s testimony that she unequivocally told State Farm’s agent that she and her husband were permanently moving to Florida. That fact — and we are required to accept it as a fact for summary judgment purposes — the majority simply dismisses as “immaterial.” Maj. Op. at 1221 n.7. But that fact is anything but immaterial. There can be no more material fact about whether Anna Duckworth put State Farm on notice that she and her husband were moving to Florida permanently than the fact that she told State Farm they were moving to Florida permanently.
I.
The majority opinion states that even assuming, as it must at this stage, that Anna Duckworth told State Farm’s Agent Whiting that she and her husband were permanently moving to Florida, “State Farm still had valid reason to doubt that the Duckworths intended to permanently reside in Florida.” Maj. Op. at 1221 n.7. It argues that “[a] reasonable observer in State Farm’s position ... would have good cause to question whether the Duckworths intended to permanently reside in Florida,” and “even had Anna told Whiting the move to Florida was ‘permanent,’ it was still possible that the Duckworths would decide to permanently reside elsewhere.” Maj. Op. at 1228. It insists that the Duckworths’ “later actions overwhelmingly indicated to State Farm that [their] move to Florida was not necessarily permanent.” Maj. Op. at 1219.
While all of that might be proven true at a trial, none of it matters at the summary judgment stage, which is where we are. There is no support in the governing substantive law, of Florida or in our summary judgment law for the proposition that judgment can be granted on the factual issue of notice of the insured’s intent because an insurer has “valid reason to doubt” an insured’s unequivocal statement of intent, because an insurer has “good cause to question” if the insured will carry out the stated intent, because it is “still possible” that an insured could change her intent, or because later actions indicated that the move “was not necessarily permanent.”
The rule is that “[s]ummary judgment should be granted only when the evidence *1232 produced by the nonmoving party, when viewed in a light most favorable to that party, fails to establish a genuine issue.” Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir.1986). “If one or more of the essential elements is in doubt, then summary judgment must not be granted.” Id. at 952. All a non-moving party must do to avoid summary judgment is show a disputed issue of material fact.
“Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence. It is not the court’s role to weigh conflicting evidence or to make credibility determinations; the non-movant’s evidence is to be accepted for purposes of summary judgment.” Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir.1996). In other words, in determining whether a genuine issue of material fact remains at this stage of the proceedings, “[njeither we nor the district court are to undertake credibility determinations or weigh the evidence.” Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir.2010); cf. Norelus v. Denny’s, Inc., 628 F.3d 1270, 1293 (11th Cir.2010) (“[A]s everyone knows, appellate courts may not make fact findings.”). That, however, is exactly what the district court did in granting summary judgment to State Farm and what the majority has done in affirming it.
A.
At her deposition, Anna Duckworth testified as follows:
Q: And did you tell [the Maryland agent] that that was going to be a permanent change of address for you?
A: I told her that we were permanently moving to the State of Florida, I just wasn’t sure where we were going to live in Florida. She was also informed that [the new address] was my daughter’s home and that I would notify her when we decided where in Florida we were going to live.
Q: All right. And you specifically recall telling her that you were going to find other residence someplace in the State of Florida other than your daughter’s residence?
A: Yes.
Q: Did you suggest or indicate to her that you were going to be staying temporarily with your daughter?
A: Temporarily with my daughter, yes. Permanently in the State of Florida.
Q: And you — as you sit here today, you recall that specific statement that, I am permanently living in Florida effective May whatever date, 2006?
A: Yes.
In order to conclude that State Farm did not have reasonable notice that the Duckworths had permanently moved to Florida, one would have to disbelieve Anna Duck-worth’s deposition testimony that she specifically told her State Farm agent in Maryland that even though her address in Florida was temporary, the move to Florida was permanent. And that is exactly what the majority does — disbelieve the testimony — even though courts are not authorized at the summary judgment stage to believe or disbelieve testimony.[2]
*1233 The majority rejects Anna Duckworth’s testimony as “immaterial” because it finds as a fact that the Duckworths’ “later actions overwhelmingly indicated to State Farm that [their] move to Florida was not necessarily permanent.” Maj. Op. at 1219. But at the summary judgment stage courts, including appellate courts, have no business making fact findings.
In a squid-like attempt to cover its move into the jury box, the majority opinion throws up a cloud of ink composed of lesser facts in an effort to mask its unauthorized rejection of the primary fact that State Farm was told that the Duckworths’ move to Florida was permanent. See Maj. Op. at 1227-28. The majority’s list of facts is incomplete. Among the facts that the majority acknowledges earlier in its opinion but fails to include in its list of those relevant to the critical issue of notice are these:
(1) “In July 2006 ... Anna called Whiting to inform her that the motorcycle’s California registration had expired, that Aquila had registered the motorcycle in Florida, and that the motorcycle had a new Florida license plate.” Maj. Op. at 1222.
(2) “In response to Anna’s call, Whiting sent Anna new proof-of-insurance cards” to the Duckworths’ Florida address. Maj. Op. at 1222.
(3) “In November 2006, Anna again called "Whiting, ... and Anna told her that Aquila was ‘still putting in applications all over Florida.’ ” Maj. Op. at 1222.
(4) Anna testified that when she declined to obtain new policies from Debbie Banks through the Charlie Cobb State Farm agency, Debbie advised her to “[w]ait until you get settled, [because] insurance rates in Volusia County [Florida] are higher than anywhere else [in Florida,].”[3] Doc. 28-2 at 97; see Maj. Op. at 1222, 12 n.8.
(5)“[0]n November 9, 2006, Anna faxed "Whiting a typed confirmation of the request that listed Nikki’s [Florida] address as their place of residence.” Maj. Op. at 1222.
(emphasis added).
Despite all of those facts, and Anna Duckworth’s own unequivocal testimony that she specifically told State Farm Agent Whiting that the Duckworths were permanently moving to Florida, the majority nevertheless insists on pretending that “State Farm had no information from which it could infer that the Duckworths had conclusively decided that their new home would be in Florida.” Maj. Op. at 1228 (emphasis added). Summary judgment ought not be based on the pretended absence of evidence.
Faced with conflicting evidence, a reasonable trier of fact could conclude that the Duckworths put State Farm on reasonable notice that their move to Florida was permanent, or it could conclude, as the majority acting as a factfinder does, that their inconsistent actions “overwhelmingly indicated to State Farm that the Duckworths’ move to Florida was not necessarily permanent.” Maj. Op. at 1219. Because reasonable minds could differ in their ultimate conclusions based on the disputed and undisputed material facts, a *1234 trier of fact — not the district court on a motion for summary judgment and not a majority of this Court — should weigh the conflicting evidence and make a fact finding about whether State Farm had reasonable notice that the Duckworths’ move was permanent.
B.
Because of its decision against Anna Duckworth on the reasonable notice issue, the majority does not reach the citizenship requirement of Florida’s public policy exception to its lex loci contractus rule. Because I disagree with the majority on the reasonable notice issue, I will address it. The requirement means that in order to get past summary judgment, Anna Duck-worth must have created a genuine issue of material fact that the Duckworths were “in the process of establishing themselves as permanent residents” of Florida. See Gillen v. United Servs. Auto. Ass’n, 300 So.2d 3, 6 (Fla.1974). I conclude that Anna Duckworth’s testimony along with other undisputed facts create a genuine issue about that, so that the district court was also precluded from granting summary judgment to State Farm on the citizenship requirement.
The following evidence created a genuine issue about whether the Duckworths were actually in the process of establishing themselves as permanent residents of Florida at the time of the accident:
(1) Anna had full-time employment in Florida;
(2) Aquila had part-time employment in Florida;
(3) both Aquila and Anna were actively seeking long-term employment in Florida;
(3) one of the Duckworths’ three vehicles (the Yamaha motorcycle) was registered in Florida;
(4) Aquila had obtained a concealed weapons permit in Florida;
(5) Aquila joined the American Legion in Florida;
(6) the Duckworths had opened a bank account in Florida;
(7) the Duckworths had Florida driver licenses that predated their move to California;
(8) the Duckworths had Florida voter registration cards (which had expired)
(9) the Duckworths filed income tax returns as Florida residents.[4]
There was, to be sure, evidence weighing against a finding that the Duckworths actually were permanent Florida residents, including: their temporary living arrangements with Anna’s daughter (in Florida); the Cavalier vehicle had a Maryland title and was registered in Maryland; the Probe vehicle was registered in California with a Maryland address on the title; the Florida driver licenses at the time of the accident listed the Duckworths’ California address; their voter registrations had expired before they returned to Florida, and neither one had voted in a Florida election after 1998 when they left Florida to move to California. The conflicting evidence on the issue of Florida citizenship should be weighed by a trier of fact and not resolved by a court. Summary judgment on the issue is not appropriate, and we ought to reverse.

. Oscar Wilde, The Picture of Dorian Gray 35 (Signet Classic 1962) (1890).

. After making that credibility determination, the majority analogizes the present case to one in which "the insured advised the company on several occasions that her move to Florida was temporary and that she wanted to keep her Colorado policy intact." State Farm Mut. Auto. Ins. Co. v. Davella, 450 So.2d 1202, 1204 (Fla. 3d DCA 1984); see Maj. Op. at 1230. The analogy, of course, does not fit. Anna Duckworth did not tell the insurance company that the move to Florida *1233 was temporary, but just the opposite. Opposites are not analogous, but just the opposite.

. Crediting Anna Duckworth’s testimony and drawing all reasonable inferences in her favor, we have to infer that Debbie Banks meant that “insurance rates in Volusia County are higher than anywhere else” in Florida, thereby implying that Banks, an agent of State Farm, was aware of the Duckworths’ intentions to reside permanently somewhere in Florida.

. Anna Duckworth, asserts in her brief that she and her husband filed their income tax returns as Florida residents. Because Florida has no state income tax, we assume that she means they listed a Florida address on their federal income tax returns. Even though there is no record citation for the assertion, State Farm’s brief does not dispute it.