**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-2293**

---

JOSEPH TANKOVITS; ANITA TANKOVITS,

Plaintiffs,

and

SCOTTSDALE INSURANCE COMPANY,

Intervenor/Plaintiff - Appellee,

versus

DEL SUPPO, INCORPORATED,

Intervenor/Defendant - Appellant.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (CA-03-69)

---

Argued: March 17, 2005

Decided: April 29, 2005

---

Before KING and GREGORY, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED:** Patrick Joseph McDermott, MCDERMOTT & BONENBERGER, P.L.L.C., Wheeling, West Virginia, for Appellant. Renatha Susan Garner, MACCORKLE, LAVENDER, CASEY & SWEENEY, P.L.L.C., Charleston, West Virginia, for Appellee. **ON BRIEF:** Heather M. Wright, MACCORKLE, LAVENDER, CASEY & SWEENEY, P.L.L.C., Morgantown, West Virginia, for Appellee.

-------------------

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This appeal presents an insurance coverage dispute between Scottsdale Insurance Company (Scottsdale) and its insured Del Suppo, Inc. (Del Suppo), a swimming pool contractor. The primary issue on appeal is whether the complaint in a civil action filed against Del Suppo by its customers Joseph and Anita Tankovits (the Tankovitses) triggered liability coverage (i.e., duties to defend and indemnify) under the "Professional Liability Coverage Part" of the insurance policy that Scottsdale had issued to Del Suppo for the policy period February 28, 2001 to February 28, 2002. (J.A. 36). We resolve this issue in favor of Del Suppo, and therefore, vacate the district court's grant of summary judgment in favor of Scottsdale and remand for further proceedings consistent with this opinion.

I.

A.   The Insurance Policy At Issue.

Scottsdale, an Ohio corporation with its principal place of business in Arizona, issued an insurance policy in Pennsylvania to Del Suppo for the policy period February 28, 2001 to February 28, 2002 (the Policy). The first page of the Policy is entitled "COMMON POLICY DECLARATIONS," and it specifies that the Policy "consists of the following coverage parts for which a premium is indicated." (J.A. 36). The declarations page then proceeds to

- 3 -

list seven separate coverage parts: (1) Commercial General Liability Coverage Part; (2) Commercial Property Coverage Part; (3) Commercial Crime Coverage Part; (4) Commercial Inland Marine Coverage Part; (5) Commercial Auto (Business Auto or Truckers) Coverage Part; (6) Commercial Garage Coverage Part; and (7) Professional Liability Coverage Part. With respect to the Commercial General Liability Coverage Part, under the heading "Premium," the declarations page states "$ 3,691 ." Id. With respect to the Professional Liability Coverage Part, under the heading "Premium," the declarations page states "$ INCLUDED ." Id. With respect to the other five listed coverage parts, under the heading "Premium," the declarations page states "$ NOT COVERED ." (J.A. 36).

The Commercial General Liability Coverage Form, which is the part of the Policy detailing the terms, conditions, and exclusions of the Commercial General Liability Coverage Part, provides that Scottsdale agrees to pay those sums that Del Suppo "becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (J.A. 45). The Commercial General Liability Coverage Form further provides that Scottsdale will have the "right and duty to defend" Del Suppo "against any 'suit' seeking those damages." Id.

According to the Commercial General Liability Coverage Form, "[t]his insurance applies to 'bodily injury' and 'property damage'

only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury' or 'property damage' occurs during the policy period." (J.A. 45). The General Liability Coverage Form defines the term "occurrence" as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (J.A. 56).

Of relevance in the present appeal, the Commercial General Liability Coverage Form specifies numerous exclusions from coverage, including an exclusion for bodily injury or property damage for which Del Suppo is obligated to pay "by reason of the assumption of liability in a contract or agreement" (the Contract Exclusion). (J.A. 45). Another exclusion excludes coverage of property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it" (the Property Damage Caused By Your Work Exclusion). (J.A. 48). Additionally, the Commercial General Liability Coverage Form excludes coverage of property damage to Del Suppo's product "arising out of it or any part of it" (the Damage To Your Product Exclusion) and to Del Suppo's work "arising out of it or any part of it and included in the 'products-completed operations hazard'" (the Damage to Your Work Exclusion). Id.

At the heart of the dispute on appeal is an endorsement to the Policy entitled "ERRORS AND OMISSIONS EXTENSION" (the E&OE

- 5 -

Endorsement). (J.A. 62). The E&OE Endorsement is reproduced as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ERRORS AND OMISSIONS EXTENSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Description of Operations:  SWIMMING POOL CONTRACTOR

In consideration of an additional premium, and subject to the conditions and exclusions in the coverage form, the coverage afforded by this endorsement shall apply to sums which you shall become legally obligated to pay as a result of "bodily injury" or "property damage" due to any negligent act, error or omission committed during the policy period in the conduct of the operations shown above, whether committed by you or by any person for whom you are legally responsible.

Additional Premium: $_____INCL_____

Id. Notably, this endorsement makes no mention of the Professional Liability Coverage Part.

In remarkable contrast to the Commercial General Liability Coverage Part, the Policy does not contain a corresponding coverage form with respect to the Professional Liability Coverage Part. Indeed, besides the declarations page, the only two places the phrase "professional liability" is mentioned in the Policy are: (1) in the "PROFESSIONAL LIABILITY DEDUCTIBLE ENDORSEMENT," which endorsement sets the deductible "under the PROFESSIONAL LIABILITY Coverage" at $500 per claimant (J.A. 63); and (2) the "NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT," which lists the

Professional Liability Coverage Part as one of the coverage parts modified by that endorsement.

B.    The Litigation.

Pursuant to a written contract executed on May 17, 2001, the Tankovitses contracted with Del Suppo for Del Suppo to construct and install an in ground swimming pool and related improvements (e.g., sidewalk) at their home in Ohio County, West Virginia. Highly dissatisfied with the completed project, on May 16, 2003, the Tankovitses brought a civil action against Del Suppo in the United States District Court for the Northern District of West Virginia, based upon diversity jurisdiction.[1]  28 U.S.C. § 1332. The Tankovitses' complaint alleged two causes of action:    (1) breach of contract; and (2) negligent performance.  Both causes of action involved allegations of poor workmanship on the part of Del Suppo in constructing/installing the in ground swimming pool and related improvements at the Tankovitses' home in West Virginia.  In the negligence cause of action, the Tankovitses alleged that Del Suppo had held itself out as having special knowledge and expertise in the construction and installation of swimming pools and related improvements.    The Tankovitses' complaint alleged no bodily injuries and sought damages in excess of $75,000 "sufficient to compensate [them] for their damages as a consequence of [Del

---

[1]The Tankovitses are citizens and residents of West Virginia, while Del Suppo is a Pennsylvania corporation with its principal place of business in Donora, Pennsylvania.

- 7 -

Suppo's] negligence and breach of contract, together with both pre-judgment and post judgment interest, costs and attorney fees as allowed by law." (J.A. 14).

On November 10, 2003, pursuant to Federal Rule of Civil Procedure 24, Scottsdale moved to intervene in the Tankovitses' civil action against Del Suppo in order to file a complaint for a declaratory judgment declaring that Scottsdale "has no duty to defend or to provide coverage in connection with the allegations and claims asserted against Del Suppo, Inc., by the Plaintiffs herein . . . ." (J.A. 96). Scottsdale's proposed intervenor complaint also sought an award of attorney fees and costs from Del Suppo. On December 18, 2003, the district court granted Scottsdale's motion to intervene.

Scottsdale subsequently filed a motion for summary judgment. In its Memorandum of Law in support of its motion for summary judgment, Scottsdale argued that coverage was unavailable under the Commercial General Liability Coverage Part because: "(1) the damages alleged by the Tankovitses were not caused by an 'occurrence' as that term is defined in the policy; and (2) the claims asserted by the Tankovitses are essentially contractual in nature, and coverage for contractual liability is specifically excluded, as is coverage for business risks, such as defective construction." (J.A. 116). Scottsdale asserted that under applicable choice of law rules, Pennsylvania substantive law

governed its coverage dispute with Del Suppo because the Policy was issued in Pennsylvania. Scottsdale presented no argument regarding the availability of coverage under the Professional Liability Coverage Part of the Policy.

In its responsive memorandum, Del Suppo agreed that Pennsylvania substantive law applied to the dispute, but nonetheless opposed Scottsdale's motion for summary judgment on two grounds. First, Del Suppo argued that coverage existed under an endorsement to the Commercial General Liability Coverage Form entitled "BROADENED PROPERTY DAMAGE COVERAGE FOR SWIMMING POOLS." (J.A. 70). Second, and of specific relevance in the present appeal, Del Suppo argued that the allegations in the Tankovitses' complaint triggered coverage under the Professional Liability Coverage Part, which had no limiting language or exclusions as compared to the Commercial General Liability Coverage Part. In support of its claim of coverage under the Professional Liability Coverage Part, Del Suppo focused upon the allegations in the Tankovitses' complaint alleging that it had held itself out as having special knowledge and expertise in the construction and installation of swimming pools and related improvements, but negligently constructed and installed the swimming pool and related improvements at the Tankovitses' home.

In its Reply Memorandum, Scottsdale argued that the allegations in the complaint triggered neither the broadened

property damage endorsement nor the Professional Liability Coverage Part. With respect to the Professional Liability Coverage Part, Scottsdale took the position that the E&OE Endorsement unambiguously constitutes the whole of professional liability coverage under the Professional Liability Coverage Part. Then, because the E&OE Endorsement expressly provides that any coverage provided under it is "subject to the conditions and exclusions in the [Commercial General Liability] coverage form," Scottsdale contended that coverage under the E&OE Endorsement was excluded in this case by the Contract Exclusion, the Property Damage Caused By Your Work Exclusion, the Damage To Your Product Exclusion, and/or the Damage To Your Work Exclusion.

The district court granted Scottsdale's motion for summary judgment. The district court held that no coverage existed under the Commercial General Liability Coverage Part because the Tankovitses' complaint did not allege facts constituting an "occurrence" as that term is defined in the Commercial General Liability Coverage Form. Alternatively, the district court held that the Contract Exclusion applied to deny coverage. Additionally, the district court held that no coverage existed under the broadened property damage endorsement to the Commercial General Liability Coverage Part. With respect to Del Suppo's claim of coverage under the Professional Liability Coverage Part, the district court agreed with Scottsdale's position that the E&OE

endorsement constituted the sum total of professional liability coverage provided under the Policy and under such endorsement, no coverage existed.

The district court entered judgment in favor of Scottsdale on September 7, 2004. The Tankovitses subsequently settled their claims against Del Suppo, resulting in the district court dismissing the entire action with prejudice on October 25, 2004. This timely appeal followed.

## II.

We review the district court's grant of summary judgment in favor of Scottsdale de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1166-67 (4th Cir. 1988). Accordingly, the questions before us on de novo review are whether any genuine issues of material fact exist for the trier of fact, and if not, whether Scottsdale was entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.

A. Arguments by the Parties.

On appeal, Del Suppo does not challenge the district court's finding of no coverage under the Commercial General Liability Coverage Part. Rather, Del Suppo takes issue solely with the district court's finding of no coverage under the Professional

Liability Coverage Part. According to Del Suppo, the Policy is ambiguous regarding the scope of coverage provided by the Professional Liability Coverage Part, and therefore, under the well-settled rule of Pennsylvania law that any ambiguity in an insurance policy must be construed against the drafter, the district court should have construed the ambiguity in favor of liability coverage in this case. As part of its ambiguity argument, Del Suppo contends that any potential professional liability coverage under the E&OE Endorsement is illusory at best because the endorsement is gutted by the qualifying language making it subject to the terms, conditions, and exclusions of the Commercial General Liability Coverage Form.

On appeal, Scottsdale continues to adhere to its position that the E&OE Endorsement unambiguously constitutes the sum total of professional liability coverage under the Policy, and the same exclusions which apply to deny coverage under the Commercial General Liability Coverage Part apply equally to deny Del Suppo coverage under the Professional Liability Coverage Part. Moreover, Scottsdale denies that coverage under the E&OE Endorsement is illusory. In this regard, Scottsdale proffers that coverage under the E&OE Endorsement would be triggered by an allegation that Del Suppo negligently designed the swimming pool, and that such negligent design work proximately caused bodily injury. Scottsdale also asserts that the E&OE Endorsement modifies the Commercial

General Liability Coverage Form to provide coverage for any bodily injury or property damage occurring <u>after</u> expiration of the Policy on February 28, 2002, as long as the alleged error or omission on the part of Del Suppo that allegedly caused the bodily injury or property damage took place during the policy period.  At oral argument, Scottsdale characterized this circumstance as turning the Policy into a "claims made" policy as opposed to an "occurrence" policy.

B.    Applicable Law.

Under Pennsylvania substantive law, which Del Suppo and Scottsdale agree governs resolution of their coverage dispute, "[t]he task of interpreting a contract is generally performed by a court rather than by a jury.  The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument."  <u>Standard Venetian Blind Co. v. American Empire Ins. Co.</u>, 469 A.2d 563, 566 (Pa. 1983).  If language of an insurance policy is clear and unambiguous, the role of the court is to enforce the policy as written.  <u>Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs.' Ass'n</u>, 517 A.2d 910, 913 (Pa. 1986).  However, if language in an insurance contract is ambiguous the ambiguity must be construed in favor of the insured and against the insurer as the drafter.  <u>Id.</u>; <u>Fleishman v. General Am. Life Ins. Co.</u>, 839 A.2d 1085, 1088 (Pa. Super. Ct. 2003).  The existence or nonexistence of ambiguity in an insurance contract presents a

question of law.  Herr v. Grier, 671 A.2d 224, 226  (Pa. Super. Ct. 1995).  "[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."  Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).  Notably, a court must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."  Id.

   C.   Analysis.

   Here, the overarching question before us on appeal is whether the Policy, when applied to the particular set of facts in this case, is ambiguous regarding the scope of professional liability coverage.  We answer this question in the affirmative.

   The structure and language of the Policy, when applied to the facts of this case, no doubt create ambiguity regarding the scope of liability coverage provided Del Suppo under the Professional Liability Coverage Part of the Policy.  First, the declarations page expressly lists the Professional Liability Coverage Part as a separate coverage part from the Commercial General Liability Coverage Part.  This makes sense given that, as a general rule, professional liability insurance coverage is tailored to provide coverage for special risks inherent in the specific profession of the insured, while commercial general liability insurance coverage is meant to cover risks generally borne by anyone in a commercial enterprise.  See generally Stevenson v. Hamilton Mut. Ins. Co., 672

- 14 -

N.E.2d 467, 473 (Ind. Ct. App. 1996); <u>Crum and Forster Managers Corp. v. Resolution Trust Corp.</u>, 620 N.E.2d 1073, 1078 (Ill. 1993); 1 Lee R. Russ & Thomas F. Segalla, <u>Couch on Ins.</u> § 1:35 (3d Ed. Nov. 2004); 9 Lee R. Russ & Thomas F. Segalla, <u>Couch on Ins.</u> § 131:38 (3d Ed. Nov. 2004). At bottom, the separate listings and the commonly understood distinct natures of these two types of liability coverages strongly suggest that the Professional Liability Coverage Part covers risks distinctively different from the Commercial General Liability Coverage Part.

At this point, we observe that the Commercial General Liability Coverage Part has a corresponding coverage form. Such form is quite lengthy and details, through various definitions, provisions, and exclusions, the scope of liability coverage provided Del Suppo under the Commercial General Liability Coverage Part. Given this circumstance, one would reasonably expect the Professional Liability Coverage Part to have a corresponding coverage form. As previously explained, it does not. Indeed, with little substantive content, the phrase "Professional Liability Coverage" is mentioned in only two other parts in the Policy--in the Professional Liability Deductible Endorsement and the Nuclear Energy Liability Exclusion Endorsement.

Seeking to explain this obvious structural difference in the Policy, Scottsdale points us to the E&OE Endorsement and claims that it unambiguously constitutes the sum total of the professional

liability coverage provided under the Policy. In support, Scottsdale relies upon the proposition, undisputed by Del Suppo, that "errors and omissions" coverage is synonymous with "professional liability" coverage. See, e.g., 9 Couch on Ins. § 131:38 (3d Ed. 2004).

Assuming arguendo that Scottsdale's interpretation of the Policy is a reasonable one, an at least equally reasonable interpretation exists which provides Del Suppo liability coverage with respect to the Tankovitses' complaint. Such reasonable interpretation is that the E&OE Endorsement does not provide the sum total of liability coverage under the Professional Liability Coverage Part, and, in fact, the Tankovitses' complaint triggers coverage under such part. **First**, the E&OE Endorsement specifies that it modifies the Commercial General Liability Coverage Part, but makes no mention of modifying or limiting the Professional Liability Coverage Part. **Second**, the E&OE Endorsement describes itself as an "EXTENSION." **Third**, the E&OE Endorsement subjects itself to the same conditions and exclusions in the Commercial General Liability Coverage Form. These three circumstances taken together strongly suggest that the E&OE Endorsement, at most, modifies the Commercial General Liability Coverage Part to extend, in some way, the time period of liability coverage already provided

under that part, but covers the same types of risks covered by the Commercial General Liability Coverage Part.[2]

Because professional liability coverage is generally understood to provide coverage for special risks inherent in the specific profession of the insured, see generally Stevenson, 672 N.E.2d at 473; Crum and Forster Managers Corp., 620 N.E.2d at 1078; 1 Couch on Ins. § 1:35; 9 Couch on Ins. § 131:38, one may reasonably interpret the Policy's separate listing of the Professional Liability Coverage Part as providing coverage for risks not covered by the Commercial General Liability Coverage Part and its endorsements. Thus, at least one reasonable interpretation of the Policy is that Del Suppo is covered for all bodily injury and property damage claims arising from its negligence, errors, and/or omissions in the execution of its professional work, i.e., in the construction of swimming pools and the walkways that surround swimming pools. Cf. McCarthy v. Bainbridge, 739 A.2d 200, 203 (Pa. Super. Ct. 1999) ("Medical malpractice liability insurance provides coverage for amounts the insured (i.e., the doctor) is held legally liable to pay others because of the doctor's own

---

[2]We agree with Del Suppo that the express language in the E&OE Endorsement providing that "the coverage afforded by this endorsement" is "subject to the conditions and exclusions in the [Commercial General Liability] coverage form," appears to eliminate the potential for any coverage under the E&OE Endorsement, thus making coverage under such endorsement illusory. Given our ambiguity analysis, however, we need not actually decide whether coverage under the E&OE Endorsement is illusory.

negligence and the harm it caused."), aff'd, 774 A.2d 1246 (Pa. 2001).

Because the language of the Policy regarding the scope of professional liability coverage provided by the Policy, when applied to the present set of facts, is susceptible of two reasonable interpretations (one favoring Scottsdale and one favoring Del Suppo), the Policy is ambiguous regarding the scope of the Professional Liability Coverage Part. Madison Constr. Co., 735 A.2d at 106. Here, the Tankovitses' complaint: (1) alleges that Del Suppo held itself out as having special knowledge and expertise in the construction and installation of swimming pools and related improvements; and (2) alleges that Del Suppo's negligent performance of its various professional duties in connection with the construction and installation of the swimming pool and related improvements at their home in West Virginia caused them to suffer property damage. We have no trouble concluding that these allegations fall squarely within the concept of professional liability coverage which is embodied, without limitation, in the Policy as the Professional Liability Coverage Part listed on the declarations page. Because Pennsylvania law requires that we construe ambiguous policy language against the insurer as the drafter of the policy and in favor of the insured, Gene & Harvey Builders, Inc., 517 A.2d at 913; Fleishman, 839 A.2d at 1088, we hold that the Tankovitses' complaint triggers liability coverage

(*i.e.*, duties to defend and indemnify) under the Professional Liability Coverage Part of the Policy. Accordingly, Scottsdale, as a matter of law, is not entitled to a declaratory judgment declaring that it "has no duty to defend or to provide coverage in connection with the allegations and claims asserted against Del Suppo, Inc., by the Plaintiffs herein . . . ." (J.A. 96). We, therefore, vacate the judgment in favor of Scottsdale and remand for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>